PACKOWSKI v UNITED FOOD AND COMMERCIAL WORKERS
LOCAL 951

Docket No. 282419. Submitted June 1, 2009, at Grand Rapids. Decided
July 8, 2010, at 9:00 a.m.

Mark Packowski brought an action in the Kent Circuit Court against
United Food and Commercial Workers Local 951, where he had
worked as a business agent and organizer, claiming that he was
wrongfully terminated in violation of Michigan public policy and
the union's policy requiring just cause for discharging employees.
The court, Paul J. Sullivan, J., granted summary disposition under
MCR 2.116(C)(10) in favor of the union on Packowski's claim that
he was wrongfully discharged in violation of public policy. In a
subsequent opinion and order, the court granted summary dispo-
sition under MCR 2.116(C)(4) in favor of the union on Packowski's
claim that he was wrongfully discharged in violation of the union's
just-cause policy, concluding that it lacked subject-matter jurisdic-
tion because the claim was preempted by the Labor-Management
Reporting and Disclosure Act (LMRDA), 29 USC 401 *et seq.*
Packowski moved for reconsideration, which the court denied.
Packowski appealed.

The Court of Appeals *held*:

There are three types of federal preemption: express preemp-
tion, conflict preemption, and field preemption. In this case,
conflict preemption precluded Packowski's claim that he was
discharged in violation of the union's just-cause policy. Under the
doctrine of conflict preemption, federal law preempts state law to
the extent that the state law conflicts with federal law or the
purposes and objectives of Congress. One of the purposes of the
LMRDA is to ensure union democracy. Wrongful-discharge claims
brought by discharged union employees who were in policymaking
or policy-implementing positions would undermine the LMRDA's
purpose and goal of protecting democratic processes in union
leadership because such claims would infringe on the elected-
union leadership's ability to implement the policies on which they
were elected. The circuit court correctly granted summary dispo-
sition in favor of the union under MCR 2.116(C)(4).

Affirmed.

BECKERING, P.J., dissenting, would have held that Packowski's wrongful-discharge claim was not preempted by the LMRDA and would vacate the circuit court's orders granting summary disposition in favor of the union on that basis and denying Packowski's motion for reconsideration. Enforcing a union's just-cause policy does not conflict with the LMRDA's objective of ensuring union democracy because it was the choice of the elected-union leadership to offer a just-cause employment contract. The majority's contrary holding will permit unions to offer employment contracts with just-cause provisions that the employees have no ability to enforce in state court, rendering such provisions virtually meaningless.

ACTIONS — EMPLOYMENT LAW — WRONGFUL DISCHARGE — JUST-CAUSE REQUIRE-MENT FOR DISCHARGE FROM EMPLOYMENT — FEDERAL PREEMPTION — CONFLICT PREEMPTION — LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT.

Under the doctrine of conflict preemption, federal law preempts state law to the extent that the state law conflicts with the purposes and objectives of Congress; the Labor-Management Reporting and Disclosure Act (LMRDA) preempts state-law wrongful-discharge claims brought by discharged union employees who were in policymaking or policy-implementing positions because those claims would undermine the LMRDA's purpose of ensuring union democracy by infringing on the elected-union leadership's ability to implement the policies on which they were elected (29 USC 401 *et seq.*).

*Farr Oosterhouse & Krissoff* (by *Joel E. Krissoff*) for plaintiff.

*The Karmel Law Firm* (by *Jonathan D. Karmel*) and *Keller, Vincent & Almassian, PLC* (by *Michael D. Almassian*), for defendant.

Before: BECKERING, P.J., and WILDER and DAVIS, JJ.

WILDER, J. Plaintiff, Mark Packowski, appeals by right the circuit court's order granting summary disposition for defendant, United Food and Commercial Workers Local 951, under MCR 2.116(C)(4), and an order denying plaintiff's motion for reconsideration. Because we

agree with the circuit court that federal preemption applies to plaintiff's remaining claim, we affirm.

I

Defendant employed plaintiff as a business agent and, later, as an organizer. In his complaint, plaintiff alleged that he was demoted from business agent to organizer in 1999 after he assisted in a federal Department of Labor investigation of defendant's election activities. Plaintiff further alleged that he was treated differently and excluded from staff events, such as training, because he refused to contribute to defendant's legal defense fund. Plaintiff alleged that, for these reasons, defendant subsequently terminated him against public policy. In an amended complaint, plaintiff also alleged that his termination violated defendant's just-cause policy, which prohibited defendant from discharging employees except for just cause. The sole issue before us on appeal is plaintiff's claim that he was terminated without just cause.

Plaintiff's complaint alleged that he had worked for defendant since 1995. According to the complaint, plaintiff took a medical leave from work from September 10, 2001, to September 14, 2001. Plaintiff alleged that he had returned to work for a half-day on September 14, but then a flareup of his health condition forced him to leave work.

Defendant asserted below that it discharged plaintiff on September 27, 2001, for being absent from work without authorization. Defendant also asserted that it terminated plaintiff for falsifying records, including his daily itinerary and mileage records for September 14, 2001. Defendant admitted that it had an employment policy that employees, including plaintiff, could only be

terminated for just cause, but defendant denied that its termination of plaintiff violated that policy.

Defendant also had employment policies and standards that governed automobile use and business mileage reporting. The policies prohibited reimbursement for personal miles and required a monthly report specifying business and personal miles. The policies required accurate recordkeeping to ensure that defendant complied with the law. Departmental staff who had organizing duties, such as plaintiff, were also required to contact defendant by 9:00 a.m. every day to report their itineraries to a supervisor and to promptly contact a supervisor if any changes in itinerary occurred.

Defendant argued below that on or about September 9, 2001, plaintiff informed defendant by a voicemail message of a flareup in his health condition, but he did not communicate with defendant again regarding his condition or his resulting inability to work until September 14, 2001, when he faxed a note from his doctor indicating that he would be absent from September 10 to September 14. Defendant asserted that plaintiff reported that he was going to work the second shift at the Wal-Mart store in St. John's, Michigan, on September 14. Defendant later determined that plaintiff had not worked the full shift, because he left to referee a football game, and that plaintiff had failed to report a change in his itinerary. Defendant also asserted that plaintiff claimed that he had intended to stop at the Wal-Mart stores in Alma and Mt. Pleasant, Michigan, after the game, but had not informed defendant of this change in his itinerary, and, regardless, defendant contended that plaintiff went home after the game rather than to work as he had stated he would. Defendant further maintained that plaintiff falsified his mileage report for September 14, 2001, by overstating his business miles.

II

After plaintiff filed this action, defendant filed several motions for summary disposition. This appeal involves defendant's summary disposition motion regarding plaintiff's cause of action for wrongful termination in violation of defendant's just-cause policy. Defendant contended below that this claim was preempted by the Labor-Management Reporting and Disclosure Act (LMRDA), 29 USC 401 *et seq.* Defendant argued that, under *Finnegan v Leu*, 456 US 431; 102 S Ct 1867; 72 L Ed 2d 239 (1982), the primary purpose of the LMRDA is to ensure union democracy. Thus, a union president, elected by the rank-and-file members, may terminate policymaking and policy-implementing employees without violating the LMRDA because the LMRDA does not restrict an elected union official's freedom to choose staff whose views reflect his or her own (which would be the views on the basis of which he or she was elected). Further, defendant argued that courts from other jurisdictions, relying on *Finnegan*, have held that the LMRDA preempts state-law wrongful-discharge claims by policymaking and policy-implementing employees, because such claims would interfere with the elected union leader's ability to implement the policy upon which the union members elected the leader.

Defendant also argued that plaintiff claimed that he was terminated because he cooperated with the Department of Labor's investigation of defendant's election activities and that this claim directly implicated the LMRDA's regulatory scheme because 29 USC 521(a)[1]

---

[1] 29 USC 521(a) provides:

The Secretary [of Labor] shall have power when he believes it necessary in order to determine whether any person has violated

authorizes such an investigation and 29 USC 412[2] provides for a civil action in federal court if there is retaliation based on giving truthful testimony to the Department of Labor. Thus, defendant argued, plaintiff's exclusive remedy was to file a retaliation claim under the LMRDA in federal court, and his state-law claim interfered with and was preempted by federal law. In response, plaintiff argued that his claim was not preempted by the LMRDA, that the LMRDA did not prohibit defendant from adopting a policy barring termination without just cause, and that he was not a management-level employee to which the LMRDA and caselaw interpreting the LMRDA would apply.

The circuit court granted defendant's motion. The circuit court concluded that plaintiff was a policy-implementing employee of defendant and that, as such, his state-law wrongful-termination claim, to the extent that it relied on defendant's just-cause policy, was preempted by the LMRDA because it would interfere with the union president's authority to choose his own

_____

or is about to violate any provision of this chapter (except subchapter II of this chapter) to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto. The Secretary may report to interested persons or officials concerning the facts required to be shown in any report required by this chapter and concerning the reasons for failure or refusal to file such a report or any other matter which he deems to be appropriate as a result of such an investigation.

[2] 29 USC 412 provides:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

staff and would thereby jeopardize union democracy. The circuit court denied plaintiff's subsequent request for reconsideration, determining that plaintiff had merely reiterated the same arguments addressed in the summary disposition motion and clarifying that summary disposition of plaintiff's claim had been granted under the substantive-preemption doctrine, not the jurisdictional-preemption doctrine.

III

Plaintiff argues on appeal that the circuit court erred by granting defendant's motion for summary disposition and by holding that his claim of wrongful discharge in violation of defendant's just-cause policy was preempted by the LMRDA. We disagree.

A

We review de novo a circuit court's summary disposition decision. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). Issues of law, such as federal preemption of state law, are reviewed de novo. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008). Whether a court has subject-matter jurisdiction is also an issue of law, reviewed de novo. *Fisher v Belcher*, 269 Mich App 247, 252-253; 713 NW2d 6 (2005). We review the circuit court's denial of plaintiff's motion for reconsideration for an abuse of discretion. *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000).

Defendant moved for summary disposition under MCR 2.116(C)(4), (8), and (10). The circuit court decided the motion under subrule (C)(4). Summary disposition is appropriate when the trial court "lacks jurisdiction of the subject matter." MCR 2.116(C)(4). For

jurisdictional questions under MCR 2.116(C)(4), this
Court " 'determine[s] whether the affidavits, together
with the pleadings, depositions, admissions, and docu-
mentary evidence, demonstrate . . . [a lack of] subject
matter jurisdiction.' " *L & L Wine & Liquor Corp v
Liquor Control Comm*, 274 Mich App 354, 356; 733
NW2d 107 (2007) (citations omitted).

B

The Supremacy Clause of the United States Consti-
tution gives Congress the authority to preempt state
laws. *Ambassador Bridge*, 481 Mich at 35-36. The
Supremacy Clause of the United States Constitution
provides:

> This Constitution, and the Laws of the United States
> which shall be made in Pursuance thereof; and all Treaties
> made, or which shall be made, under the Authority of the
> United States, shall be the supreme Law of the Land; and
> *the Judges in every State shall be bound thereby, any Thing
> in the Constitution or Laws of any State to the Contrary
> notwithstanding.* [US Const, art VI, cl 2 (emphasis added).]

Under the Supremacy Clause, then, this Court is bound
by federal statutes, despite any state law to the con-
trary. In other words, this Court is bound to find
preemption when it exists because federal law is the
supreme law of the land. See *Ambassador Bridge*, 481
Mich at 36.

Whether a federal statute preempts a state-law claim
is a question of federal law. *Allis-Chalmers Corp v
Lueck*, 471 US 202, 214; 105 S Ct 1904; 85 L Ed 2d 206
(1985). When such questions of federal law are involved,
we are bound to follow the prevailing opinions of the
United States Supreme Court. *Betty v Brooks & Per-
kins*, 446 Mich 270, 276; 521 NW2d 518 (1994). If a
state-law proceeding is preempted by federal law, the

state court lacks subject-matter jurisdiction to hear the state-law cause of action. *Ryan v Brunswick Corp*, 454 Mich 20, 27; 557 NW2d 541 (1997), overruled in part on other grounds by *Sprietsma v Mercury Marine*, 537 US 51; 123 S Ct 518; 154 L Ed 2d 466 (2002).

"Preemption occurs when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Ambassador Bridge*, 481 Mich at 36 (quotation marks and citation omitted). Preemption can also occur when a state or local regulation prevents a private entity from performing a function that Congress has tasked it with performing. *Id.*

There are three types of federal preemption: express preemption, conflict preemption, and field preemption. *X v Peterson*, 240 Mich App 287, 289; 611 NW2d 566 (2000). Express preemption occurs when a federal statute clearly states an intent to preempt state law or that intent is implied in a federal law's purpose and structure. *Ryan*, 454 Mich at 28. Under conflict preemption, a federal law preempts state law to the extent that the state law directly conflicts with federal law or with the purposes and objectives of Congress. *Id.*, citing *Cipollone v Liggett Group, Inc*, 505 US 504, 516; 112 S Ct 2608; 120 L Ed 2d 407 (1992). Field preemption acts to preempt state law when federal law so thoroughly occupies a legislative field that it is reasonable to infer that Congress did not intend for states to supplement it. *Ryan*, 454 Mich at 28.

A few of our sister states have considered analogous situations, and analogous state-law claims, and have found that the LMRDA conflict-preempted those claims. While we are not bound by those decisions, we may follow them if we find them persuasive. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221 n 6; 761 NW2d 293 (2008).

One closely analogous case is *Screen Extras Guild, Inc v Superior Court*, 51 Cal 3d 1017, 1024-1032; 275 Cal Rptr 395; 800 P2d 873 (1990), in which it was held that California common law, which implied a covenant of good faith and fair dealing in some employment relationships, conflicted with the LMRDA and was preempted. The plaintiff in *Screen Extras* was employed by the union as a business agent and was discharged for alleged dishonesty and insubordination. The plaintiff sued for wrongful discharge, among other claims, and alleged that the union breached a state-law covenant of good faith and fair dealing. *Id.* at 1027. Analyzing whether the plaintiff's state-law cause of action conflicted with the LMRDA's policy, the court relied on *Finnegan* in holding that in order to ensure union democracy, "Congress must have intended that elected union officials would retain *unrestricted freedom to select business agents, or, conversely, to discharge business agents* with whom they felt unable to work or who were not in accord with their policies." *Id.* at 1025 (emphasis added).

The plaintiff in *Screen Extras* argued that her claims for wrongful discharge in breach of contract, negligent and intentional infliction of emotional distress, and defamation were not preempted because she was terminated as a result of her alleged incompetence and dishonesty, not because of a policy disagreement with the union's elected officials. *Id.* at 1027. The court found this distinction between a termination for policy reasons and a "garden-variety" termination not implicating policy unpersuasive because it was unworkable in the real world and involved highly subjective determinations. *Id.* at 1027-1028. "If a business agent, for example, were discharged for failing to efficiently adopt a new set of procedures for prioritizing routine tasks which had been endorsed by elected officials, should

that be characterized as a termination to facilitate policy, or as a 'garden-variety' termination for ineffi- ciency?" *Id.* at 1028. The court in *Screen Extras* noted that it would be impossible to develop an objective test to distinguish the two, and "every wrongful discharge claim brought against a union by a business agent will be cast in 'garden-variety' terms if that is all it takes to survive preemption." *Id.* Relying on *Finnegan,* the court held that the plaintiff's claim was preempted because it conflicted with the LMRDA:

> To allow a state claim for wrongful discharge to proceed from the termination of a union business agent by elected union officials would interfere with the ability of such officials to implement the will of the union members they represent. This would frustrate full realization of the goal of union democracy embodied by the LMRDA, in contra- vention of the supremacy clause. Consequently, the LM- RDA and the supremacy clause preempt wrongful dis- charge claims brought against labor unions or their officials by former policymaking or confidential employees. [*Id.* at 1031 (citations omitted).]

See also *Tyra v Kearney,* 153 Cal App 3d 921, 925-927; 200 Cal Rptr 716 (1984) (relying on *Finnegan,* 456 US at 441, to hold that the plaintiff's claim for wrongful discharge, following termination from her *position as a business agent* for a union after she had run against the winning candidate, was preempted by the LMRDA's purpose of ensuring democratically governed unions and union officials' concomitant authority to select business agents).

Also analogous is *Vitullo v Int'l Brotherhood of Elec- trical Workers, Local 206,* 317 Mont 142; 75 P3d 1250 (2003), in which the plaintiff was a former assistant business manager for a union local. The business man- ager fired the plaintiff after the plaintiff had accepted a nomination to run against the business manager in the

next union election. *Id.* at 144. The plaintiff brought a claim under Montana's Wrongful Discharge From Employment Act, which created a just-cause-for-termination requirement and a probationary period. See Mont Code 39-2-901 *et seq.* The court held that the statutory claim conflicted with the LMRDA and *Finnegan* and was therefore conflict-preempted. *Vitullo*, 317 Mont 145-152. See also *Smith v Int'l Brotherhood of Electrical Workers, Local Union 11*, 109 Cal App 4th 1637, 1648; 1 Cal Rptr 3d 374 (2003) (holding that the plaintiff, a union organizer employee who was discharged and brought a breach of contract claim against the union, was a policymaking employee and that his breach-of-contract claim was preempted by the LMRDA).

In another case finding preemption, *Dzwonar v McDevitt*, 348 NJ Super 164, 167; 791 A2d 1020 (2002), the plaintiff was discharged from her position as a union arbitration officer for inappropriate behavior at an arbitration proceeding and for involvement in disputes with other union members. The plaintiff brought an action under New Jersey's Conscientious Employee Protection Act, arguing that she was fired in retaliation for objecting to a union official's acts that allegedly violated the LMRDA. *Id.* at 167-169. Although the LMRDA contains no express provision limiting a state's right to protect union employees from retaliation in the plaintiff's circumstances, the court held that "such a limitation may be inferred from" the LMRDA's scope. *Id.* at 170. Although the court adopted a preemption exception for claims based on an employee's unwillingness to aid in the violation of a criminal statute, citing *Bloom v Gen Truck Drivers, Office, Food & Warehouse Union, Local 952*, 783 F2d 1356, 1360-1362 (CA 9, 1986) (discussed further later in this opinion), the court held that the plaintiff's claim was preempted because it

was not based on an allegation that the union official's acts were criminal. *Dzwonar*, 348 NJ Super at 173-174. "Rather, this case involves, at most, the federal regulatory scheme and the union's own internal operating policies." *Id.* at 173.

We conclude that the reasoning in *Screen Extras, Tyra, Vitullo, Smith,* and *Dzwonar* is persuasive. We adopt that reasoning and apply it to this case. Conflict preemption applies to preclude plaintiff's state-law action. The democratic purposes of the LMRDA would be contravened by allowing a demoted or discharged business agent or organizer to sue for wrongful discharge.

We decline to follow *Young v Int'l Brotherhood of Locomotive Engineers*, 114 Ohio App 3d 499; 683 NE2d 420 (1996), a case in which the court concluded that preemption was not applicable. The plaintiff in *Young* was fired from her position as a union employee for allegedly being insubordinate and uncooperative and making derogatory remarks about the union president. *Id.* at 503. Denying these allegations, the plaintiff brought a breach-of-contract action based on her alleged 10-year contract with the union. *Id.* at 502-503. The trial court granted summary judgment, and the Ohio Court of Appeals reversed and remanded for trial, which resulted in a judgment for the plaintiff and an appeal by the union. *Id.* at 502. In the second appeal, the court held that whether the plaintiff's claim was preempted by the LMRDA depended on whether the plaintiff was a policymaking employee, which was an issue of fact for the jury to resolve. *Id.* at 504-506.

Unlike the parties in *Young*, plaintiff and defendant do not dispute the circuit court's finding that plaintiff was a policy-implementing employee. Therefore, *Young* is distinguishable from the instant case. We also find *Young* unpersuasive in that it concludes that the ques-

tion of preemption is a jury question, despite the fact that whether state law conflicts with federal law is more properly characterized as a question of law. *Ambassador Bridge*, 481 Mich at 35.

Other cases finding no conflict preemption are also more easily distinguished from the instant case than those cases finding preemption. In *Bloom*, 783 F2d at 1359-1360, the plaintiff was a union business manager who sued the union for, among other claims, wrongful discharge after he was terminated, allegedly because *he refused to falsify the union's minutes to cover up an unapproved expenditure*. The plaintiff argued that his claim was not preempted because he was an at-will employee and because there was no federal statute directly covering his employment. *Id.* at 1360. The court held that the state had a strong interest in preventing criminal actions such as embezzlement and that the LMRDA supported the plaintiff's position because it expressly "saves both state criminal actions and state-imposed responsibilities of union officers" in 29 USC 523(a) and 29 USC 524. *Id.* at 1361. The court stated that there was an exception to preemption when "a union employee bases a wrongful discharge action on *allegations that he was fired for refusing to violate state law* . . . ." *Id.* at 1362 (emphasis added). The court further determined that, because the plaintiff alleged that he was fired for refusing to illegally alter minutes and not for political reasons, the federal interest in union democracy recognized in *Finnegan* was not implicated and the state cause of action would not interfere with that statutory purpose. *Id.* at 1362.

Similarly, in *Montoya v Local Union III of the Int'l Brotherhood of Electrical Workers*, 755 P2d 1221, 1223 (Colo App, 1988), the plaintiff claimed that he was discharged from his position as a union business man-

ager for uncovering illegal union practices and refusing to vote for the candidate that the business manager favored. Because the court concluded that the business manager could hire and fire his representatives and assistants at any time and discharge would not affect the plaintiff's union membership, the plaintiff's wrongful discharge claims generally conflicted with LMRDA and were preempted. *Id.* at 1223-1224. However, the court held that the doctrine of preemption did not bar the plaintiff's wrongful discharge claim "insofar as he allege[d] that he was discharged because he refused to aid [the business manager] in his alleged criminal misuse of union funds." *Id.* at 1224.

Whereas *Bloom* and *Montoya* involved discharges for the plaintiffs' alleged refusal to commit or aid in committing a crime, plaintiff here was terminated for failing to abide by legitimate policies, such as itinerary and mileage recording, designed to *comply* with the law.[3]

Finally, we consider the decision in *Ardingo v Local 951, United Food & Commercial Workers Union*, unpublished opinion of the United States Court of Appeals for the Sixth Circuit, issued May 29, 2009 (Docket No. 08-1078). In *Ardingo*, the Sixth Circuit held that the LMRDA did not preempt a wrongful-termination claim almost identical to the claim at issue in this case. For the reasons stated below, we do not follow *Ardingo*.[4]

---

[3] We note that to the extent that plaintiff has a claim of being demoted or fired in retaliation for participating in a Department of Labor investigation, he has an action for that claim in federal court. 29 USC 412 provides for a civil action in federal court if there is retaliation based on giving truthful testimony to the Department of Labor.

[4] Although *Ardingo* did address a question of federal law, i.e. federal preemption, we are not required to follow decisions of a United States court of appeals. *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d

The plaintiff in *Ardingo* was a business agent for the same union that employed plaintiff in this case. The same policy requiring that employees be terminated only for just cause was in force. *Id.* at 2. After rumors circulated that Ardingo might mount a campaign against the union's president, the union president insinuated that Ardingo was a "pipeline to the Department of Labor." *Id.* Thereafter, Ardingo cooperated with a Department of Labor investigation concerning financial irregularities in the union and then testified before a grand jury concerning the same issues. *Id.* at 2-3. Ardingo was then reassigned in rapid succession to jobs in other states, ostensibly to assist with union organizing campaigns. *Id.* at 3. But the union was also experiencing substantial declines in revenue. *Id.* Later, Ardingo, who earned $100,000 a year and had less seniority than other similarly situated employees, was one of 10 employees who were discharged. *Id.* The union president testified that the discharge of Ardingo was for economic and other reasons. Ardingo argued that the economic reasons were not the real reason for his discharge, but a mere pretext, and that his discharge was retaliatory and in violation of the just-cause policy. *Id.* at 3-4.

The Sixth Circuit held that the LMRDA did not preempt Ardingo's state-law claim of discharge in violation of the just-cause policy. *Ardingo*, unpub op at 5-11. The court reasoned that "[t]he fact that the LMRDA does not provide a cause of action to union employees who have been fired for political reasons does not mean that state law could never restrict a union leader's discretion to terminate a union employee." *Id.* at 10, citing *Bloom*, 783 F2d at 1360-1362. The court

325 (2004). In addition, *Ardingo* is unpublished, and was not recommended for full-text publication. *Ardingo*, unpub op at 1.

further reasoned that "[s]uch a question was not even before the *Finnegan* Court. Therefore, it would be wrong to say that *Finnegan* stands for the proposition that the LMRDA gives union officials unlimited discretion in employment matters." *Ardingo*, unpub op at 11.

We disagree with *Ardingo*'s reasoning and decline to follow it. While *Finnegan* did not absolutely decide the question whether this exact claim is preempted by the LMRDA, *Finnegan* was clear that at least one of the purposes of the LMRDA is to promote union democracy and ensure that the representatives whom union members have elected are able to carry out the policies on which they were elected. See *Finnegan*, 456 US at 442 ("[I]n enacting Title I of the Act, Congress simply was not concerned with perpetuating appointed union employees in office at the expense of an elected president's freedom to choose his own staff. Rather, its concerns were with promoting union democracy . . . ."). Preemption applies when a state-law claim conflicts with the purposes of federal law. *Ambassador Bridge*, 481 Mich at 36. We believe that, in this case, plaintiff's claim would conflict with the efforts of elected union officials to implement the policies on which they were elected and, in that way, interfere with one of the purposes of the LMRDA.

IV

In sum, the cases finding preemption under similar circumstances are more numerous, more factually analogous, and more persuasive than the cases finding no preemption by the LMRDA of similar wrongful-discharge claims. The cases finding preemption of state common-law claims by the LMRDA illustrate that wrongful-discharge claims brought by discharged or demoted union employees who were in policymaking or

policy-implementing positions would undermine one of the purposes and goals of the LMRDA, namely, the purpose and goal of protecting democratic processes in union leadership. If union members cannot choose their leaders, or if the chosen leaders cannot implement the policies they were elected to implement, then the rights of union members (as represented by their elected leaders) would be thwarted, or at least diminished. Accordingly, the circuit court correctly held that the LMRDA preempts plaintiff's claim of wrongful discharge in violation of the union's just-cause policy and, because of federal preemption, the circuit court correctly held that it lacked subject-matter jurisdiction to hear that claim. *Ryan*, 454 Mich at 27.[5]

Affirmed. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

DAVIS, J., concurred.

BECKERING, P.J. (*dissenting*). Plaintiff claims that his employment was terminated in violation of defendant's just-cause policy. I write separately because I respectfully disagree with the majority's conclusion that plaintiff's wrongful-discharge claim is preempted by the Labor-Management Reporting and Disclosure Act (LMRDA), 29 USC 401 *et seq.* I would vacate the trial court's orders granting summary disposition to defendant and denying plaintiff's motion for reconsideration.

The trial court granted defendant summary disposition under MCR 2.116(C)(4), concluding that it lacked subject-matter jurisdiction. As indicated by the majority, this Court reviews de novo a trial court's decision on

---

[5] Because the circuit court correctly granted summary disposition, its denial of plaintiff's motion for reconsideration was not an abuse of discretion.

a motion for summary disposition, *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999), and reviews for an abuse of discretion its decision on a motion for reconsideration, *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000). Whether a trial court has subject-matter jurisdiction is a question of law, which this Court reviews de novo. *Fisher v Belcher*, 269 Mich App 247, 252-253; 713 NW2d 6 (2005).

"Where the principles of federal preemption apply, state courts are deprived of subject matter jurisdiction." *Ryan v Brunswick Corp*, 454 Mich 20, 27; 557 NW2d 541 (1997), overruled in part on other grounds *Sprietsma v Mercury Marine*, 537 US 51; 123 S Ct 518; 154 L Ed 2d 466 (2002). In the absence of express preemption, federal preemption may be implied in the form of conflict or field preemption. *Ryan*, 454 Mich at 28. The majority concludes here that plaintiff's wrongful-discharge claim under state law conflicts with the LMRDA and is, therefore, "conflict-preempted." "Conflict preemption acts to preempt state law to the extent that it is in direct conflict with federal law or with the purposes and objectives of Congress." *Id.*

In *Finnegan v Leu*, 456 US 431, 441; 102 S Ct 1867; 72 L Ed 2d 239 (1982), the United States Supreme Court stated that when the LMRDA was enacted, its "overriding objective was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." The Court further stated that "the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election." *Id.* According to the majority in this case, allowing plaintiff's state claim for wrongful discharge to proceed would conflict with the LMRDA's purpose of

ensuring union democracy and elected union officials' authority to select staff members.

In *Ardingo v Local 951, United Food & Commercial Workers Union*, unpublished opinion of the United States Court of Appeals for the Sixth Circuit, issued May 29, 2009 (Docket No. 08-1078), p 7, however, the court concluded that "[t]here is no danger that [the LMRDA's] objective will be interfered with by a lawsuit that seeks to vindicate an employee's rights under a just-cause employment contract." Although this Court is not required to follow decisions of a United States court of appeals, *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004), and *Ardingo* is unpublished, I find the *Ardingo* court's reasoning persuasive. See *id.* at 607. Like *Ardingo*, this case presents a unique set of facts in that plaintiff is suing to enforce his contractual rights under his just-cause employment contract with defendant. None of the out-of-state cases relied on by the majority involve a just-cause contract provision. As noted by the *Ardingo* court, "when a union chooses to offer a just-cause employment contract to an employee, there is nothing in *Finnegan* or the LMRDA that would prevent that contract from being enforced." *Ardingo*, unpub op at 10. *Finnegan* does not stand for the proposition "that state law could never restrict a union leader's discretion to terminate a union employee." *Id.*, citing *Bloom v Gen Truck Drivers, Office, Food & Warehouse Union, Local 952*, 783 F2d 1356, 1360-1362 (CA 9, 1986) (holding that a wrongful-discharge claim was not preempted by the LMRDA when a business agent claimed to have been discharged for refusing to violate state law). While the majority is correct that the LMRDA was enacted to ensure that unions are democratically governed and that elected union officials have the ability to select staff members, and, in that way, respond "to the mandate of the union

election," *Finnegan*, 456 US at 441, democratically
elected union officials may choose to offer an employee
a just-cause employment contract, omit a just-cause
provision from an employment contract, or tailor such a
provision by, for example, defining the term "just
cause" in the contract. Thus, enforcing a union's just-
cause policy does not conflict with the LMRDA's objec-
tive of ensuring union democracy. To hold otherwise
would permit unions to offer employment contracts
with just-cause provisions that the employees have no
ability to enforce, at least in state court, rendering the
provisions virtually meaningless.[1]

I would hold that plaintiff's wrongful-discharge claim
is not preempted by the LMRDA because his claim does
not directly conflict with the act or with any of its
purposes or objectives, see *Ryan*, 454 Mich at 28, and
would vacate the trial court's orders granting summary
disposition to defendant on the basis of preemption and
denying plaintiff's motion for reconsideration.[2]

---

[1] In footnote 3 of its opinion, the majority states that plaintiff may
bring a civil action in federal court under 29 USC 412 if he was
discharged in retaliation for participating in a Department of Labor
investigation. I note, however, that in general the LMRDA protects the
rights afforded union *members* because of their status as members, not
the rights afforded appointed union *employees* because of their status as
employees. See *Finnegan*, 456 US at 436-437.

[2] Defendant claims on appeal that the just-cause provision of plaintiff's
employment contract could only be enforced through arbitration. I will
not address this claim, as it is irrelevant to the question of preemption.