*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RANDALL FINKE,

Plaintiff-Appellant,

v

JOSEPH M. VANDERKELEN, HOWARD I.
UNGERLEIDER, JOSEPH DONALD SHEETS,
JAMES W. FISHER, ERIC P. BLACKHURST,
ROBERTA N. ARNOLD, DAVID DUNN, and
RICHARD M. REYNOLDS,

Defendants-Appellees.

UNPUBLISHED
May 21, 2020

No. 345621
Midland Circuit Court
LC No. 17-004936-CB

Before: K. F. KELLY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(8). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff was a shareholder of Wolverine Bancorp, Inc. (Wolverine), a savings and loan company organized under the laws of the state of Maryland and principally operating in Midland, Michigan. Defendants were directors of Wolverine, and certain defendants were also officers of Wolverine. In June 2017, defendants voted unanimously in favor of approving a merger between Wolverine and Horizon Bancorp, Inc (Horizon), with Horizon being the surviving company. The merger would result in each share of Wolverine being converted into 1.0152 shares of Horizon common stock and a cash payment of $14 per share. The merger agreement also provided that defendant David Dunn (Dunn) would be employed by Horizon and defendant Eric Blackhurst (Blackhurst) would be appointed to Horizon's board of directors. Under the terms of his employment contract, and as a result of the merger, Dunn would receive a significant amount of

-1-

money from "change in control" payments and cashing out stock options.[1] The remainder of the directors would also receive financial benefits from cashing out stock options. In negotiating the merger agreement, defendants considered, but ultimately denied, an offer by another corporation, referred to as "Company A" because of a nondisclosure agreement. The terms of the merger agreement also precluded defendants from soliciting or encouraging other offers, and required Wolverine to pay a termination fee of $3,539,000 to Horizon should Wolverine back out of the deal. When presenting the merger agreement to Wolverine's shareholders, defendants prepared a proxy statement of over 300 pages, which they also submitted to the Securities and Exchange Commission (SEC).

After the proxy statement was filed, but before the merger was approved,[2] plaintiff filed this putative class action suit against defendants, alleging that, under Maryland law, defendants had breached their fiduciary duties to the shareholders of Wolverine by refusing the offer from Company A, which was allegedly more valuable than the offer from Horizon. Plaintiff argued that defendants agreed to the Horizon merger because they were set to receive significant benefits that Wolverine's shareholders would not receive. Plaintiff also asserted that the disclosures issued by defendants in advance of the shareholders' vote were insufficient and would result in an uninformed vote. In lieu of answering the complaint, defendants moved for summary disposition under MCR 2.116(C)(8), primarily arguing that, under Maryland law, plaintiff did not have standing to bring a direct action against defendants. Rather, applicable caselaw required plaintiff to bring a derivative action on behalf of the corporation. The trial court agreed with defendants and dismissed plaintiff's complaint for a lack of standing. This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a circuit court's summary disposition decision." *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010).[3] "A court may grant summary disposition under MCR 2.116(C)(8) if the opposing party has failed to state a claim on which relief can be granted." *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010) (quotation marks and brackets omitted). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004), quoting *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could

---

[1] Wolverine's Chief Operations Officer, Treasurer, and Secretary, Rick Rosinski, would also receive a substantial payout from the merger, and would also be employed by Horizon. Although referenced in the complaint, Rosinski was not named as a defendant in plaintiff's suit and is not a party to this appeal.

[2] Wolverine shareholders subsequently voted to approve the merger.

[3] The parties agree that Maryland law governs the substantive issues in this case and that Michigan procedural law applies.

possibly justify a right of recovery." *Dalley*, 287 Mich App at 305 (quotation marks and citation omitted).

"Questions of statutory interpretation are also reviewed de novo." *Rowland v Washtenaw Co Road Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). "Whether a party has standing is reviewed de novo as a question of law." *Wilmington Savings Fund Society, FBS v Clare*, 323 Mich App 678, 684; 919 NW2d 420 (2018).

## III. ANALYSIS

Plaintiff argues that he was entitled to file a direct (i.e., non-derivative) claim against defendants, and that the trial court therefore erred by granting defendants' motion for summary disposition. With the exception of the claim that defendants breached their duty of candor in preparing the proxy statement, we disagree. With regard to the duty of candor claim, we conclude that Maryland law permits such a claim as a direct action, but we nonetheless hold that the claim was properly dismissed because plaintiff did not allege any individual damages to shareholders as a result of the alleged inaccuracies or omissions in the proxy statement.

## A. BUSINESS JUDGMENT RULE

With the exception of the duty of candor claim, which we will discuss later in this opinion, plaintiff's claims that defendants breached their fiduciary duties implicate the "business judgment rule." "The board of directors of a corporation generally manages the business of the corporation." *Sutton v FedFirst Fin Corp*, 226 Md App 46, 74; 126 A3d 765 (2015). "Under the traditional business judgment rule, courts apply a presumption of disinterestedness, independence, and reasonable decision-making to all business decisions made by a corporate board of directors." *Oliveira v Sugarman*, 451 Md 208, 221; 152 A3d 728 (2017). "Corporate directors, however, do not have unlimited authority." *Sutton*, 226 Md App at 75. This is because "[t]hey are subject to fiduciary duties . . . ." *Id*. The business judgment rule is codified in Maryland by a statute that provides in relevant part: "A director of a corporation shall act . . . [i]n good faith, . . . [i]n a manner the director reasonably believes to be in the best interests of the corporation; and . . . [w]ith the care that an ordinarily prudent person in a like position would use under similar circumstances." Md Code Ann, Corps & Ass'ns § 2-405.1(c) (West 2016); see also *Oliveira*, 451 Md at 222. "Maryland courts apply the business judgment rule to all decisions regarding the corporation's management." *Oliveira*, 451 Md at 222 (quotation marks and citations omitted).

"Ordinarily, a shareholder does not have standing to sue to redress an injury to the corporation resulting from directorial mismanagement." *Shenker v Laureate Ed, Inc*, 411 Md 317, 342; 983 A2d 408 (2009). This is because the fiduciary duties owed by directors generally "are to the corporation and not, at least directly, to the shareholders." *Sutton*, 226 Md App at 75 (quotation marks and citation omitted). "Because director fiduciary duties relating to management do not extend to shareholders, a shareholder generally does not have a direct action against the directors, and any action taken against the directors requires the shareholder to file a derivative action." *Id*. "By bringing a derivative action, shareholders invoke 'an extraordinary equitable device . . . to enforce a corporate right that the corporation failed to assert on its own behalf.' " *Oliveira*, 451 Md at 223, quoting *Werbowsky v Collomb*, 362 Md 581, 599; 766 A2d 123 (2001) (alteration in *Oliveira*). "In a derivative suit, [t]he corporation is the real party in interest and the shareholder is

only a nominal plaintiff. The substantive claim belongs to the corporation." *Oliveira*, 451 Md at 223 (quotation marks and citation omitted; alteration in original). Maryland courts, however, have held that there are exceptions to that general rule, and, under certain circumstances, shareholders can bring direct actions against directors. *Id*. at 242.

One exception to the rule requiring derivative actions by shareholders was discussed by the Maryland Court of Appeals (Maryland's highest court) in *Shenker*, 411 Md at 335-336. In that case, shareholders of an education technology corporation, Laureate, filed a direct suit against Laureate's directors. *Id*. at 326-327. The case began when Laureate's chair and chief executive officer (CEO) informed the company's board of directors that he intended to explore the possibility of Laureate "going private" via a transaction with private equity investors. *Id*. at 329. Eventually, the CEO obtained an offer from a group of investors—in one of which he had a private interest that was disclosed to the board—to essentially purchase Laureate for $62 per share. *Id*. at 329-331. Certain shareholders, believing that the deal was not financially adequate, filed a direct action against Laureate's directors alleging that they breached certain fiduciary duties owed directly to the shareholders. *Id*. at 331-332. The trial court granted the directors' motion to dismiss the case, reasoning that "a direct action against corporate directors for alleged violations of fiduciary duties, is unavailable . . . in Maryland." *Id*. at 332 (quotation marks omitted). "The trial judge based his decision on § 2-405.1(g) of the Corporations and Associations Article,[4] holding that subsection (g) 'was enacted to foreclose exactly the kinds of claims which [the shareholders] seek to bring in this action' . . . ." *Shenker*, 411 Md at 332. The Maryland Court of Special Appeals (Maryland's intermediate appellate court), affirmed the trial court's decision, agreeing that "any claims shareholders may have against directors for breach of fiduciary duty must be brought derivatively on behalf of the corporation." *Id*. at 333.

The Maryland Court of Appeals reversed the decisions of the trial court and Court of Special Appeals. *Id*. at 335-336. The court held that § 2-405.1(g) "governs the duty of care owed by directors when they undertake managerial decisions on behalf of the corporation." *Id*. at 338. However, "[w]hen directors undertake to negotiate a price that shareholders will receive in the context of a cash-out merger transaction, [] they assume a different role than solely managing the business and affairs of the corporation." *Id*. (quotation marks omitted). Specifically, the court reasoned that the "[d]uties concerning the management of the corporation's affairs change after the decision is made to sell the corporation." *Id*., citing *Revlon, Inc v MacAndrews & Forbes Holdings, Inc*, 506 A2d 173, 182 (Del, 1986).[5] In such situations, "in negotiating a share price that shareholders will receive in a cash-out merger, directors act as fiduciaries on behalf of the shareholders . . . [and] the common law imposes . . . duties to maximize shareholder value and

---

[4] The language of Md Cod Ann, Corps & Ass'ns § 2-405.1(g) (West 1999), as it existed when the Maryland Court of Appeals issued its decision in *Shenker* will be discussed in greater depth later in this opinion. In the interest of clarity, the statute stated that "[n]othing in this section creates a duty of any director of a corporation enforceable otherwise than by the corporation or in the right of the corporation." *Shenker*, 411 Md at 328 n 5.

[5] Maryland courts "frequently look[] to Delaware cases in search of widely-regarded corporate legal jurisprudence." *MAS Assoc, LLC v Korotki*, 465 Md 457, 479 n 11; 214 A3d 1076 (2019).

make full disclosure of all material facts concerning the merger to the shareholders." *Shenker*, 411 Md at 339, citing *Paramount Communications Inc v QVC Network Inc*, 637 A2d 34, 48-49 (Del, 1994); *Bennett v Propp*, 41 Del Ch 14, 21-22; 187 A2d 405 (Del, 1962). Thus, the Maryland Court of Appeals held that Laureate's directors owed certain fiduciary duties to the shareholders themselves, and not the corporation, when the directors made the decision to sell the business and began negotiating the cash-out merger. *Shenker*, 411 Md at 341.

Next, the Maryland Court of Appeals addressed whether Laureate's shareholders had pleaded a claim that they had suffered "the harm directly" from the alleged breach of fiduciary duties by Laureate's directors. *Id*. at 345.[6] The court clarified that the fact that a shareholder "suffered his or her injury in common with all other shareholders is not determinative of whether the injury suffered is direct or indirect." *Shenker*, 411 Md at 345, citing *Tooley v Donaldson, Lufkin & Jenrette, Inc*, 845 A2d 1031, 1033 (Del, 2004). Rather, the inquiry focuses on who suffered the alleged injury and who would be entitled to damages if the case was successful. *Shenker*, 411 Md at 345-346. Under the circumstances presented, the Maryland Court of Appeals reasoned that "the injury alleged, namely, a lesser value that shareholders received for their shares in the cash-out merger, is an injury suffered solely by the shareholders and not by Laureate as a corporate entity." *Id*. at 346. Consequently, the court also held that any damages would be payable to the shareholders themselves, not the corporation. *Id*. at 347. The court summarized its decision, and limited it, in the following manner:

> *In the context of a cash-out merger transaction, where the decision to sell the corporation already has been made by the Board of Directors*, those directors owe common law fiduciary duties of candor and maximization of shareholder value directly to the shareholders themselves, and claims for breach of those duties may be brought directly . . . . [*Id*. at 351 (emphasis added)]

---

[6] The language used in *Shenker*, 411 Md at 345, appeared to suggest that a direct claim could be brought if either the shareholders were owed a fiduciary duty *or* they suffered an injury independent of the corporation. Specifically, the court stated that "a shareholder may bring a direct action . . . against alleged corporate wrongdoers when the shareholder suffers the harm directly or a duty is owed directly to the shareholder, though such harm also may be a violation of a duty owing to the corporation." *Id*. However, in a later opinion, the Maryland Court of Appeals clarified that, in order to bring a direct suit against directors under Maryland law, a shareholder must plead that they suffered a harm separate from the corporation itself. *Oliveira*, 451 Md at 244-245. Indeed, the court specifically held that "*Shenker* did not eliminate the requirement that a shareholder must have suffered an injury distinct from that suffered by the corporation to bring a direct claim." *Oliveira*, 451 Md at 245. "In so far as the Court suggested that a breach of a duty to shareholders alone—absent any separate harm—could support a direct shareholder claim, the facts of *Shenker* and subsequent case law applying it demonstrate that this is not Maryland law." *Oliveira*, 451 Md at 245.

The exact limitations of the decision were explored by the Maryland Court of Special Appeals in the later *Sutton* case. *Sutton*, 226 Md App at 54.[7] The facts of the *Sutton* case are similar to the facts of the present case. The two entities involved in the case—FedFirst and CB Financial—reached a merger agreement that required approval by the shareholders. *Sutton*, 226 Md App at 54. Under the agreement, CB Financial would be the surviving entity and agreed to pay for all of the outstanding FedFirst stock with a combination of stock-for-stock and cash-for-stock exchanges. *Id*. Specifically, the agreement provided that "65% of the total shares of FedFirst would be exchanged for CB Financial stock and 35% would be exchanged for cash." *Id*.

The merger agreement also provided that the president and CEO of FedFirst would be employed as an officer of CB Financial. *Id*. Further, four of FedFirst's directors would join the board of directors of CB Financial. *Id*. The directors of FedFirst were also set to have their "outstanding stock options . . . terminated and . . . receive a cash payment" for those previously unvested options. *Id*. at 54-55. In agreeing to the merger, FedFirst's directors promised that they would not solicit or encourage other offers, but that they could consider "superior" offers that were unsolicited. *Id*. at 55-56. However, "the agreement included a termination fee of $2,750,000, which FedFirst agreed to pay in the event that it terminated the agreement." *Id*. at 56. To prepare for the shareholders' vote, a proxy statement was prepared and filed with the SEC, which contained over 300 pages of documents. *Id*. FedFirst also had a financial analyst review the deal, and the analyst opined that the merger agreement was financially fair to FedFirst's shareholders. *Id*. at 60.

After receiving news of the merger agreement, the plaintiff filed a lawsuit alleging that FedFirst's directors had violated fiduciary duties owed directly to the shareholders. *Id*. at 63. The plaintiff asserted that the directors obtained benefits in the deal and agreed to a purchase price that did not adequately compensate the shareholders. *Id*. at 64. The plaintiff also argued that the proxy statement had omitted material information that would have allowed the shareholders to make an informed decision. *Id*. at 66. The directors moved to dismiss the case, arguing that the plaintiff, as a shareholder, did not have standing to bring a direct claim against the directors. *Id*. at 65. The trial court granted the motion, reasoning that the plaintiff lacked standing because he had failed to plead an injury distinct from the corporation, and because the *Shenker* decision only applied to cash-out mergers that resulted in a change of control. *Sutton*, 226 Md App at 66.

On appeal, the Maryland Court of Special Appeals discussed the applicability and scope of the decision in *Shenker*, 411 Md at 345. *Sutton*, 226 Md App at 81-83. When considering whether the decision applied to the facts of the case being considered, the *Sutton* court stated that "[t]he question presented in this case is what constitutes 'appropriate events' that trigger common law duties of directors to shareholders." *Id*. at 83. The *Sutton* court, while rejecting a bright-line rule that the duty was *only* triggered by a cash-out merger, held that the circumstances which "permit a direct action, are when 'the decision is made to sell the corporation,' the 'sale of the corporation is a foregone conclusion,' or the sale involves 'an inevitable or highly likely change-of-control

---

[7] " '[A] reported decision [of the Court of Special Appeals] constitutes binding precedent . . . .' " *Johnson v State*, 223 Md App 128, 154 n 5; 115 A3d 668 (2015), quoting *Archers Glen Partners, Inc v Garner*, 176 Md App 292, 325; 933 A2d 405 (2007), aff'd 405 Md 43 (2008) (alterations in *Johnson*).

situation.' " *Sutton*, 226 Md App at 85, quoting *Shenker*, 411 Md at 338, 341. The *Sutton* court also noted, however, that the Maryland Court of Appeals had never "explain[ed] what factual scenarios satisfy the above triggering events." *Sutton*, 226 Md App at 85. Thus, the *Sutton* court turned to Delaware law for guidance. *Id*. at 85-86.

"The Delaware Supreme Court has made clear that not every corporate combination triggers a duty to maximize shareholder value." *Id*. at 85, citing *Paramount Communications, Inc v Time Inc*, 571 A2d 1140, 1151 (Del, 1989). Specifically, the Delaware Supreme Court has held that the company in question "did not put the corporation up for sale, or make the dissolution of the corporate entity inevitable, and therefore trigger *Revlon*[8] duties, merely by entering into a merger agreement with [another company], even where the agreement contained a 'no-shop' clause and other structured safety devices to protect the agreement." *Sutton*, 226 Md App at 86, citing *Paramount Communications, Inc*, 571 A2d at 1151. Instead, Delaware courts have winnowed down such cases that could result in direct actions to the following circumstances:

> (1) "when a corporation initiates an active bidding process seeking to sell itself or to effect a business reorganization involving a clear break-up of the company," (2) "where, in response to a bidder's offer, a target abandons its long-term strategy and seeks an alternative transaction involving the break-up of the company," or (3) when approval of a transaction results in a "sale or change of control." [*Sutton*, 226 Md App at 86 (citations omitted).]

The *Sutton* court then considered whether any of those circumstances applied to the facts of the case before it. *Id*. at 86-87. The court held that "the directors merely explored options for a potential merger, which they would then present to the stockholders for approval," and thus, did not "intiate[] an active bidding process or abandon[] a long-term strategy to seek to break up the company." *Id*. Consequently, the facts of the *Sutton* case did "not support a conclusion, pursuant to *Shenker*, 411 Md at 338, 341, that *Revlon* duties applied because a decision [had been] made to sell the corporation or the sale of a corporation [was] a foregone conclusion." *Sutton*, 226 Md App at 87 (quotation marks and citation omitted; alterations in original). Therefore, "[t]he only potential rationale raised for finding a *Revlon* duty to maximize shareholder value . . . involves whether the transaction involved a highly likely change-of-control situation." *Sutton*, 226 Md App at 87 (quotation marks and citation omitted). The *Sutton* court adopted reasoning of the Delaware court decisions narrowly applying that rule, noting that "in a stock-for-stock merger" there is only a change of control where "there is no tomorrow for the shareholders . . . because the stock received is subject to the control of a single individual or associated group who has majority control over the merged entity." *Id*. (quotation marks and citation omitted). More importantly, there is not a change of control "in the context of a stock-for-stock merger where control of the merged entity will remain in a large, fluid, public market . . . ." *Id*.

---

[8] The term "*Revlon* duties" refers to particular duties, such as maximization of stock value, that are owed by directors to shareholders after a decision has been made to sell a corporation. *Revlon, Inc*, 506 A 2d at 182.

In *Sutton*, as in the case before us, the corporate directors being sued entered into a merger agreement that involved a part cash-for-stock and part stock-for-stock transaction. Further, the proportion of stock-for-stock and cash-for-stock was nearly identical. Certain directors in both cases would obtain employment with, or positions on the board of, the company that survived the merger. All of the directors in both cases would have unvested stock options paid out if the merger agreement was approved. Both merger agreements required the company being sued to abstain from soliciting other offers or negotiating with other companies, and to pay a substantial fee if the merger agreement was terminated. Most importantly, though, in both cases, the merger resulted in the shareholders receiving shares of a company in a "in a large, fluid, public market . . . ." *Sutton*, 226 Md App at 87.

Given the factual similarity of the two cases, we are bound by the decision in *Sutton*. Under almost identical circumstances, the Maryland Court of Special Appeals in a published, and thus binding, case, held that the shareholders did not have standing to bring a direct action against the corporation's directors. *Id*. at 91; *Archers Glen Partners, Inc v Garner*, 176 Md App 292, 325; 933 A2d 405 (2007), aff'd 405 Md 43 (2008). Given the determinative nature of the *Sutton* decision, the trial court properly held that plaintiff lacked standing to bring the direct action in this case and, consequently, summary disposition was appropriately granted. *Sutton*, 226 Md App at 91.

Plaintiff acknowledges *Shenker* and *Sutton*, but argues that the law of Maryland changed after the *Sutton* opinion. At the time both *Shenker* and *Sutton* were decided, the statute codifying the business judgment rule contained the following clause: "Nothing in this section creates a duty of any director of a corporation enforceable otherwise than by the corporation or in the right of the corporation." *Shenker,* 411 Md at 328 n 5, quoting Md Code Ann, Corps & Ass'ns § 2-405.1(g) (1975, 2007 Repl Vol). When the statute was amended in 2016, that clause was not included. Md Cod Ann, Corps & Ass'ns § 2-405.1 (West 2016). Instead, the statute contained the following language: "This section . . . [i]s the sole source of duties of a director to the corporation or the stockholders of the corporation, whether or not a decision has been made to enter into an acquisition or a potential acquisition of control of the corporation or enter into any other transaction involving the corporation . . . ." Md Cod Ann, Corps & Ass'ns § 2-405.1(i)(1) (West 2016). Notwithstanding that the 2016 amendment altered the statutory language, the Maryland Court of Appeals subsequently considered a case involving the business judgment rule and direct actions by shareholders against directors, and still applied the law of *Shenker*.

Specifically, in *Oliveira*, 451 Md at 242, decided in 2017, the Maryland Court of Appeals considered whether a shareholder could bring a direct claim against directors under circumstances in which shares had been diluted. Although not in the context of a merger, the court still noted that, in order to bring a direct action against a director, a shareholder was required to "show that she has suffered an injury distinct from the corporation," citing *Shenker*. *Oliveira*, 451 Md at 242. The *Oliveira* court, like the courts in *Shenker* and *Sutton*, then turned to Delaware caselaw to determine under what circumstances a direct claim could be brought by shareholders against directors. *Oliveira*, 451 Md at 240-242. The *Oliveira* court specifically held "that to bring a direct claim[,] shareholders must show that they have suffered harm distinct from that of the corporation." *Id*. at 246. When they fail to do so, "their claims are derivative." *Id*.

In sum, in both the cases decided before the statute was amended—*Shenker* and *Sutton*—and the case decided after the amendment—*Oliveira*—Maryland courts have applied the business judgment rule to bar direct actions from shareholders against a corporation's directors for claims related to the management of the corporation and the effect of management's actions on share price. To be permitted to bring a direct claim against directors, a shareholder must plead an injury separate and distinct from the corporation, and, when deciding that issue, Delaware cases provide appropriate guidance. *Oliveira*, 451 Md at 240-242; *Shenker*, 411 Md at 338-339, 345; *Sutton*, 226 Md App at 86-89. Consequently, in a situation in which there is a part stock-for-stock and part cash-for-stock merger between two companies that are both traded in "in a large, fluid, public market," the shareholders can only bring a derivative claim on behalf of the corporation. *Sutton*, 226 Md App at 87. Because plaintiff failed to do so in this case, he failed to state a claim on which relief could be granted, and the trial court appropriately granted summary disposition in favor of defendants on plaintiff's breach of fiduciary duty claims. *Id*. at 87, 91. Because we affirm the trial court on the grounds discussed, we do not consider defendants' arguments concerning alternate grounds for affirmance.[9]

## B. DUTY OF CANDOR

The trial court did not separately address plaintiff's claim that defendants breached their duty of candor by distributing a misleading or incomplete proxy statement to the shareholders, thereby impairing their ability to cast an informed vote on the merger. To the extent that the trial court granted summary disposition on this claim on the ground that a direct action was not permitted, it erred by doing so. Shareholders may bring a direct claim against directors of a corporation for impairment of their "right to a fully informed vote" arising from a proxy statement that contained materially inaccurate or incomplete disclosures. *Oliveira*, 451 Md at 239, quoting *In re Tyson Foods, Inc Consolidated Shareholder Litigation*, 919 A2d 563 (Del Ch, 2007). However, to do so, a plaintiff or plaintiffs must "assert direct, individual damages" rather than merely a difference in the purchase price of shares based on the shareholder's approval of a proposed merger versus an alternative price that could have been obtained from a different deal. See *Id* at 239, quoting *In re JP Morgan Chase & Co Shareholder Litigation*, 906 A2d 766, 733 (2006) (noting that "the [*JP Morgan Chase*] court rejected the shareholder's theory of damages—the difference between the potential Bank One purchase price and the actual purchase price—reasoning that the price difference had 'no logical or reasonable relationship to the harm caused to the shareholders *individually* for being deprived of their right to cast an informed vote.' "). In this case, although plaintiff alleges numerous inaccuracies and omissions in the proxy statement, the only "theory of damages" presented was that the actual purchase price of the shareholders' Wolverine shares in the Horizon merger was lower than the potential purchase price in a merger

---

[9] Defendants have presented an array of alternative grounds for affirming the trial court's order granting their motion for summary disposition. We decline to consider them because, in light of the fact that summary disposition was appropriate for lack of standing, the alternative grounds for affirming the trial court have been rendered moot. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks omitted) (holding that, "as a general rule, this Court will not entertain moot issues or decide moot cases," such as those "in which a judgment cannot have any practical legal effect upon a then existing controversy").

with Company A. This is "the hurdle [plaintiff] cannot clear" in his claim for breach of the duty of candor, *Oliviera*, 451 Md at 238, and the trial court correctly held that plaintiff had failed to state a claim on which relief could be granted, albeit for the wrong reason. See *Gleason v Mich Dep't of Trans*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

Affirmed.


/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra