# STATE OF MICHIGAN

# COURT OF APPEALS

In re KMN, Minor.

FOR PUBLICATION
February 26, 2015
9:00 a.m.

Nos. 322329 & 322883
Newaygo Circuit Court
Juvenile Division
LC No. 14-000805-AD

Before: RIORDAN, P.J., and MARKEY and WILDER, JJ.

WILDER, J.

Intervenor-appellant, the Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians or Gun Lake Tribe (Tribe) appeals as of right the July 9, 2014 order allowing petitioner-appellees, Cindy Ann Arbutante and Joey Duarte Arbutante, adoption of a child (KMN) and the trial court's earlier June 4, 2014 orders certifying KMN's mother, Heidi Nelson's consenting to the adoption, terminating Nelson's parental rights after her consent, making KMN a ward of the court for purposes of adoption, and transferring KMN to the Arbutantes for a pre-adoptive placement.[1] The primary emphasis of the Tribe's claims on appeal is the assertion that the trial court violated Section 1915(a) of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and MCL 712B.23(2) of the Michigan Indian Family Protection Act (MIFPA), MCL 712B.1 *et seq.* ICWA establishes minimum federal standards for the placement of Indian children in foster or adoptive homes that reflect the unique values of Indian culture. 25 USC 1902. Section 1915(a) of ICWA provides:

> In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families.

---

[1] The Arbutantes argue that a claim of appeal filed by the Tribe in Docket No. 322329 from the June 4 orders could not be appealed as of right because the orders were not final. We decline to address this argument, however, because there is no dispute that the July 9 order, from which the Tribe filed a claim of appeal in Docket No. 322883, was a final order under MCR 7.202(6)(a)(i), and the earlier June 4 orders in the same case can be challenged in that appeal.

MCL 712B.23(2) provides, "Absent good cause to the contrary, the adoptive placement of an Indian child must be in the following order of preference: (a) A member of the child's extended family. (b) A member of the Indian child's tribe. (c) An Indian family." We find no violations of ICWA but agree that the trial court failed to follow the mandates of MCL 712B.23. Accordingly we affirm, in part, vacate and reverse in part, and remand for further proceedings.

I

On October 24, 2013, in a separate case (lower court docket number 13-008396-NA), the Department of Human Services (DHS) filed a petition for removal of KMN immediately after her birth on the basis of Nelson's previous and lengthy history of abuse and neglect of her other children. The petition was supplemented the next day to include a request for termination of Nelson's parental rights.

On February 19, 2014, Jason Carlson, a Native American, was identified as the biological father of KMN; he voluntarily consented to termination of his parental rights in lower court docket number 13-008396-NA. In that termination order, the trial court checked a box that provided, "The adoptee is an Indian child as defined in MCR 3.002(5) and the court has considered the application of the Indian Child Welfare Act in this matter."[2]

On April 2, 2014, in lower court docket number 13-008396-NA, the trial court ordered that efforts should be made to preserve and reunify Nelson and KMN. On May 5, 2014, and again on June 4, 2014, in the instant case (lower court docket number 14-000805-AD), the Arbutantes filed a petition for direct placement adoption. They had no previous relationship to KMN. The petition provided that Carlson's parental rights had been terminated, that KMN is an Indian child, and that Nelson had consented pursuant to MCL 712B.13 and the Michigan Adoption Code. Notice of the petition was also sent on May 5, 2014, to Nancy Bogren, a representative of the Tribe.

In a June 3, 2014 brief in support of adoption, the Arbutantes and Nelson claimed that KMN lived in a foster home that did not comply with ICWA from about October 26, 2013 to May 29, 2014, that she was subsequently transferred to Carlson's distant relative,[3] and that Nelson did not approve of that transfer. They further claimed that Carlson abandoned Nelson after her pregnancy began with KMN, that he was imprisoned before KMN was born, and further, that although he is of Indian descent, he never lived with the Tribe or adopted its culture. The Arbutantes and Nelsons also argued that the United States Supreme Court's ruling in *Adoptive Couple v Baby Girl*, ___ US ___; 133 S Ct 2552, 2564; 186 L Ed 2d 729 (2013) was dispositive—preferences in 25 USC 1915(a) did not apply because Carlson abandoned KMN, and there were no other parties (Indian or non-Indian) who had formally sought to adopt KMN.

---

[2] We note that the current version of the court rules defines "Indian Child" in MCR 3.002(12).

[3] It appears from the record that KMN was placed with Kelly Rose Levandoski, Carlson and KMN's cousin, and Steven Michael Levandoski. The Levandoskis are members of the Tribe.

The trial court held a hearing on the adoption petition on June 4, 2014. The Arbutantes and Nelson argued that Nelson's preference regarding KMN's adoptive placement constituted good cause to deviate from ICWA's placement preferences in 25 USC 1915(a) and that KMN's only connection to the Tribe was Carlson, who abandoned her. The Arbutantes and Nelson urged the trial court to acknowledge Nelson's consent for direct placement adoption and certify a pre-adoptive placement with the Arbutantes.

The Tribe opposed the adoption petition, maintaining that KMN is an Indian child under the broad definitions in ICWA and MIFPA, that there was an "Indian relative ready, willing, and able to adopt" KMN, and that the relative had not yet filed a petition to adopt only because Nelson's rights had not yet been terminated, and the abuse and neglect case was still pending. The Tribe further argued that terminating the abuse and neglect case at that time could put the child in "harm's way." In response to a question by the trial court, the Tribe's attorney replied that although she was eligible for membership in the Tribe, KMN could not receive a subsidy from casino proceeds until she was an adult. The trial court made several comments relative to the Tribe's argument, notably that it, "underst[oo]d the theory behind the law . . . I disagree whether this child is an Indian child," and, "I think that if there was any Indian culture to be preserved here the Court would be the first one to preserve it." Regarding the potential harm to KMN if the abuse and neglect case was terminated, the trial court commented that "I think the child is in harm's way with you, to be frank with you," and that moving KMN without its consent would put the child in "harm's way."

The Arbutantes and the guardian ad litem (GAL) argued in response to the Tribe's arguments that although KMN had lived with Kelly Rose Levandoski (Carlson and KMN's cousin) and Steven Michael Levandoski for several days before the June 4 hearing, she was not being removed from an Indian home for purposes of ICWA and MIFPA, and those provisions did not apply. DHS opposed the adoption and further argued that if the neglect case were still pending, the trial court could not allow Nelson to grant the direct placement adoption because she was required to have legal or physical custody.

Following arguments on the adoption petition, the trial court closed the abuse and neglect case on the record, ruling that it was "returning . . . [KMN] to her mother . . . for . . . immediate custody." The trial court then received testimony from Nelson indicating she consented on the record to the direct placement adoption.[4] Nelson testified that she was friends with Carlson. She told him about the pregnancy within two months, but "he wanted nothing to do with [KMN]." She also testified that Carlson has no connection to his Indian culture, but he takes the money he is entitled to from casino revenues. Following Nelson's testimony, the trial court entered a written order in lower court docket number 13-008396-NA terminating the jurisdiction of the trial court and releasing KMN to Nelson. In lower court docket number 14-000805-AD, the trial court signed an order certifying Nelson's consent to adoption of KMN by the Arbutantes. As

---

[4] The tribe objected to the court's immediate action on the direct placement adoption, but the trial court ruled that the tribe was "out of it . . . the tribe doesn't have any interest because this Court has . . . terminated its jurisdiction over the child."

-3-

with the order terminating Carlson's parental rights, the trial court checked the box on the form order which provided that KMN is an Indian child. The trial court also entered an order terminating Nelson's parental rights after her consent. That document provided KMN is an Indian child and "the court has considered the application of the Indian Child Welfare Act in this matter." The trial court then made KMN a ward of the court for purposes of adoption and transferred her to the Arbutantes for pre-adoptive placement.

The Tribe filed an objection in the trial court to the placement with the Arbutantes, maintaining that the placement violated ICWA and MIFPA, arguing that KMN was an Indian child, that it had repeatedly notified Nelson of a tribal family's desire to adopt KMN, and that although no one in the Tribe had formally petitioned for adoption of KMN before the June 4 hearing, no one could have done so while the abuse and neglect case was pending. The Tribe also filed a notice of intervention in the trial court and filed a claim of appeal from the order transferring KMN to the Arbutantes in Court of Appeals Docket No. 322329.

On June 20, 2014, the Tribe filed a petition for rehearing in lower court docket number 14-000805-AD arguing that on June 4, the trial court failed to adhere to the adoptive placement preferences required by ICWA and MIFPA. Further, it argued the trial court failed to make a finding that good cause existed to deviate from the adoptive placement preferences in those acts. In its brief in support, the Tribe urged the trial court to reconsider its June 4 orders, particularly because an adoption with the Arbutantes could not be final for six months. MCL 710.56.

On the same day, in lower court docket number 14-000814-AF, Kelly Rose Levandoski, KMN's cousin, and Steven Michael Levandoski, filed a petition for adoption. The petition provided that KMN is an Indian child (associated with the Tribe). A proof of the relationship between KMN and Kelly was attached to the petition identifying Kelly as KMN's first cousin once removed on Carlson's side of the family.

On June 24, 2014, in lower court docket number 13-008396-NA, DHS filed a motion for reconsideration, arguing that the trial court violated MIFPA. DHS also argued that the trial court released KMN to Nelson without considering on the record whether her rights should be terminated according to MCL 712A.19b. DHS urged the trial court to either: 1) determine the facts in the petition were established, terminate KMN's parental rights and follow the placement priorities under MIFPA, or 2) determine the facts in the petition were not established and return KMN to Nelson.

On July 7, 2014, the Arbutantes and Nelson filed an answer to the Tribe's petition for rehearing. They urged the trial court to deny the petition and find that the Levandoskis' petition for adoption was improperly filed and should not be considered. They requested attorney fees for each of their attorneys and costs pursuant to MCR 3.206(C)(1).

On July 9, 2014, the trial court denied the Tribe's petition for rehearing and the motion for reconsideration filed by DHS. It ruled that the Levandoskis did not properly file a petition for adoption and denied it. It further ruled that ICWA and MIFPA do not apply to this matter, but even if they did, parental preference would constitute good cause to deviate from any placement preferences. The trial court expressed that if the Tribe successfully appeals, Nelson's parental rights should be "fully reinstated and the Termination of Parental Rights Order set

aside." It ordered the Tribe and its attorneys to pay reasonable attorney fees to attorneys Merica Dobry and Melissa Meyers "based upon statute, court rule and law."

On the same day, the trial court entered an order of adoption, making the Arbutantes the parents of KMN and discharging KMN as a ward of the court. In Docket No. 322833, the Tribe filed a claim of appeal from this order.

II

The Tribe maintains that KMN is an Indian child under both ICWA and MIFPA and that the trial court improperly concluded otherwise. Issues involving statutory interpretation, and the application of ICWA and MIFPA are questions of law that this Court reviews de novo. See *Empson-Laviolette v Crago*, 280 Mich App 620, 624; 760 NW2d 793 (2008).

> The primary goal when interpreting a statute is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 217-218; 801 NW2d 35 (2011). "The words contained in a statute provide us with the most reliable evidence of the Legislature's intent." *Green v Ziegelman*, 282 Mich App 292, 301; 767 NW2d 660 (2009). "[S]tatutory provisions are not to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole." *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). If statutory language is unambiguous, the Legislature is presumed to have intended the plain meaning of the statute. *Fleet Business Credit, LLC v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 591; 735 NW2d 644 (2007). An unambiguous statute must be enforced as written. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007). [*Hoffenblum v Hoffenblum*, ___ Mich App ___; ___ NW2d ___ (2014).]

Under ICWA, an Indian child is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 USC 1903(4). KMN was unmarried and less than one year old at the time of the June 4 hearing. Although she was not a member of the Tribe, she was eligible for membership, and her biological father, Carlson, was a member of the Tribe. Therefore, KMN is an Indian child under ICWA.

Under MIFPA, MCL 712B.3(k) provides:

" 'Indian child' means an unmarried person who is under the age of 18 and is either of the following:

(i) A member of an Indian tribe.

(ii) Eligible for membership in an Indian tribe as determined by that Indian tribe."

The definition of "Indian child" in MIFPA is similar to ICWA, but does not require the child, who is eligible for membership, to also be the biological child of a member of an Indian tribe. Therefore, KMN is also an Indian child under MIFPA.

-5-

Admittedly, the trial court made somewhat inconsistent statements as to its conclusion on this critical factor; however, "a court speaks through its written orders and judgments, not through its oral pronouncements," *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). The trial court's written orders, and thus the record as a whole, demonstrate the trial court found that KMN is an Indian child. Accordingly, we find no error requiring reversal on this issue under either ICWA or MIFPA.

III

The Tribe also argues that the trial court failed to apply ICWA's adoptive placement preferences or find good cause for disregarding that preference. We disagree.

25 US 1915(a) provides that "[i]n any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families."

In *Baby Girl*, 133 S Ct at 2564, our United States Supreme Court held ICWA's adoptive placement "preferences are inapplicable in cases where no alternative party has formally sought to adopt the child. This is because there simply is no 'preference' to apply if no alternative party that is eligible to be preferred under § 1915(a) has come forward." In *Baby Girl*, the biological father (a member of an Indian tribe), who contested the child's placement with an adopted couple and argued his parental rights should not have been terminated, did not seek to adopt the child in the lower court proceedings. *Id.* Although there was testimony in the record that the tribe had certified approximately 100 couples to be adoptive parents, none of those couples had formally sought to adopt the child in the state court. *Id.* at 2565 n 12.

In the instant case, at the time of the June 4 hearing, the Arbutantes were the only couple that had formally sought to adopt KMN. There is no dispute that the Arbutantes have no familial connection to KMN or relationship with any tribe. Therefore, they do not qualify for a preference under 25 US 1915(a). Although the Tribe's attorney stated on the record that there was an "Indian relative ready, willing, and able to adopt" KMN, that unnamed relative had not formally sought to adopt her and can be likened to the 100 certified families in *Baby Girl* that had not petitioned for adoption during the state court proceedings. The Tribe did not request an adjournment to allow the relative to file a competing petition for adoption. See MCL 710.25(2). Absent a pending adoption petition of an alternative party that was eligible to be preferred under § 1915(a), there was no ICWA preference to apply at the June 4 hearing.

IV

The Tribe alternatively argues that the trial court failed to place KMN in one of MIFPA's listed potential placements or find good cause for disregarding that list. We agree.

MCL 712B.23 provides, in relevant part:

(2) Absent good cause to the contrary, the adoptive placement of an Indian child must be in the following order of preference:

-6-

(a) A member of the child's extended family.

(b) A member of the Indian child's tribe.

(c) An Indian family.

* * *

(4) *The court shall not find good cause to deviate from the placement preferences stated in this section without first ensuring that all possible placements required under this section have been thoroughly investigated and eliminated.* All efforts made under this section must be provided to the court in writing or stated on the record. The court shall address efforts to place an Indian child in accordance with this section at each hearing until the placement meets the requirements of this section.

(5) The court's determination of good cause to not follow the order of preference shall be based on 1 or more of the following conditions:

(a) A request was made by a child of sufficient age.

(b) A child has an extraordinary physical or emotional need as established by testimony of an expert witness.

* * *

(7) A record of each placement of an Indian child shall be maintained by the department or court evidencing the efforts to comply with the order of preference specified in this section. The record shall be made available at any time upon the request of the secretary or Indian child's tribe.

* * *

(10) All efforts made to identify, locate, and place a child according to this section shall be documented and, upon request, made available to the court, tribe, Indian child, Indian child's lawyer-guardian ad litem, parent, or Indian custodian. [Emphasis added.]

MIFPA differs from ICWA in that it does not give a preference to eligible parties over ineligible parties. Rather, MIFPA requires that, absent good cause, the adoptive placement *must* be either with a member of the child's extended family, a member of the Indian child's tribe, or an Indian family, in that "order of preference." MCL 712B.23(2). The record demonstrates that the Arbutantes have no familial connection to KMN; they are not connected to the Tribe, and they are not an Indian family. Therefore, absent a good cause finding, MIFPA precluded the trial court from placing KMN with the Arbutantes.

The trial court's July 9, 2014 order concludes that Nelson's preference amounted to good cause. This ruling was erroneous. As noted by the Tribe, MCL 712B.23(5) provides:

-7-

The court's determination of good cause to not follow the order of preference *shall* be based on 1 or more of the following conditions:

(a) A request was made by a child of sufficient age.

(b) A child has an extraordinary physical or emotional need as established by testimony of an expert witness. [Emphasis added.]

Under the doctrine of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), good cause is limited to the conditions articulated in MCL 712B.23(5)—a request made by a child of a sufficient age or a circumstance involving a child with an extraordinary need. Therefore, a biological parent's choice of an adoptive placement does not constitute good cause under MCL 712B.23(2). Because the record does not establish that KMN, an infant at the time of these proceedings, was of sufficient age to choose the Arbutantes, or that KMN has any extraordinary needs which the Arbutantes as adoptive parents could satisfy, the record fails to satisfy the requirements of MCL 712B.23(2), and the trial court erred by placing KMN with the Arbutantes.

Moreover, MCL 712B.23(4) provides, "The court shall not find good cause to deviate from the placement preferences stated in this section without first ensuring that all possible placements required under this section have been thoroughly investigated and eliminated." MCL 712B.23(4). *Merriam Webster's Collegiate Dictionary* (2003) defines the word "possible" as "being within the limits of ability, capacity, or realization." Accordingly, the trial court was required to give meaningful consideration to KMN's possible placement with the Levandoskis, as extended family and make findings as to why that placement should be eliminated before making any determination that there was good cause to deviate from the statutory placement criteria. Therefore, unlike ICWA, under MIFPA, the fact that no alternate petition for adoption had yet been filed is irrelevant.[5] After the trial court has been alerted that there are alternative possible placements consistent with the statute, a trial court must first ensure they have been

---

[5] Despite the plain language of MCL 712B.23(4), the Arbutantes claim that parties that have not formally petitioned for adoption should not be considered for purposes of the order of preference and good cause to deviate. They rely on a provision in MCL 712B.5, requiring the "best interest of the Indian child" to be determined "in accordance with the [ICWA]" and argue the order of preference and good cause to deviate should also be determined in accordance with the ICWA. But the Legislature's specific mention of the ICWA with regard to a best-interests determination and the absence of any reference to the ICWA with regard to the order of preference and good cause to deviate are deemed to be intentional. *Hackel v Macomb County Comm*, 298 Mich App 311, 324; 826 NW2d 753 (2012) ("[T]he doctrine of expressio unius est exclusio alterius, or inclusion by specific mention excludes what is not mentioned."); see also *In re AJR*, 300 Mich App 597, 600; 834 NW2d 904 (2013) ("this Court may not ignore the omission of a term from one section of a statute when that term is used in another section of the statute. ") If the Legislature had intended the order of preference and good cause to be interpreted in accordance with the ICWA, it would have so specified in the MIFPA.

"thoroughly investigated and eliminated." Before making a placement outside of the statutorily preferred placement options, the trial court is required to "address efforts to place an Indian child in accordance with this section at each hearing until the placement meets the requirements of this section." MCL 712B.23(4).

Even though the Levandoskis had not filed a petition for adoption before the June 4 hearing, the trial court did nothing to ensure this possible placement had been realized, investigated, and eliminated. Rather, the trial court only questioned whether there was any financial motivation for KMN's membership in the Tribe. Furthermore, the trial court did nothing to ensure that any other possible listed placements were realized, investigated, and eliminated. Therefore, the trial court erred with regard to the application of MCL 712B.23(4).

At oral argument, the Arbutantes challenged the application of MIFPA by claiming it was preempted by ICWA. Although this matter was not preserved by adequate briefing, we address and reject this contention.

The Supremacy Clause of the United States Constitution gives Congress the authority to preempt state laws. *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 139; 796 NW2d 94 (2010); U.S. Const. art. VI, cl. 2. "Preemption occurs when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Packowski*, 289 Mich App at 140 (citation and quotation marks omitted). Although not specifically articulated by the Arbutantes, the Arbutantes appear to be asserting a claim of obstacle preemption, which "occurs 'when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Ter Beek v City of Wyoming*, 297 Mich App 446, 460; 823 NW2d 864, (2012), quoting *Hillsborough Co, Fla v Automated Med Laboratories, Inc*, 471 US 707, 713; 105 S Ct 2371; 85 L Ed 2d 714 (1985).

As the Arbutantes properly note, ICWA does not define good cause to deviate from its placement preferences, whereas MIFPA only allows deviation from its order of preference on the basis of an Indian child's choice or extraordinary needs. Based on this distinction in the two laws, the Arbutantes claim that because trial courts have less discretion regarding the placement of Indian children under MIFPA, the children have less protection from the trial court and this outcome interferes and conflicts with the purposes of ICWA. We disagree. The purpose of ICWA is to protect an Indian child's Indian culture. See 25 USC 1902. The Michigan Legislature's definition of good cause does not stand as an obstacle to the accomplishment of this purpose. Rather, by giving trial courts less discretion to deviate from a placement with a member of the child's extended family, a member of the Indian child's tribe, or an Indian family, the Legislature endeavored to further protect the Indian child's Indian culture—a purpose consistent with ICWA. Therefore, we reject the Arbutantes' claim that MIFPA was preempted by ICWA.[6]

_____

[6] Because the trial court's violation of MCL 712B.23 invalidates the adoption, we need not address the Tribe's alternative arguments on appeal that under the circumstances of this case, Nelson could not consent to the adoption in the manner required under MCL 710.23a and MCL

V

Next, the Tribe argues that the trial court improperly ordered the Tribe to pay attorney fees to Nelson and the Arbutantes for defending the petition for rehearing. We agree.

> This Court reviews a trial court's ruling on a motion for costs and attorney fees for an abuse of discretion. An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. A trial court's findings of fact, such as whether a party's position was frivolous, may not be set aside unless they are clearly erroneous. [*Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010).]

"Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Haliw v City of Sterling Hts*, 471 Mich 700, 707; 691 NW2d 753 (2005). MCR 3.206(C) provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

MCR 3.201(A) provides:

> Subchapter 3.200 applies to
>
> (1) actions for divorce, separate maintenance, the annulment of marriage, the affirmation of marriage, paternity, family support under MCL 552.451 et seq., the custody of minors under MCL 722.21 et seq., and visitation with minors under MCL 722.27b, and to
>
> (2) proceedings that are ancillary or subsequent to the actions listed in subrule (A)(1) and that relate to

710.23d, that Nelson was coerced to consent to the adoption, and that the trial court abused its discretion by denying the Tribe's petition for rehearing. We similarly decline to address the Arbutantes' argument that if neither the ICWA nor the MIFPA applies in this case, the Tribe lacks standing to make its remaining arguments on appeal.

(a) the custody of minors,

(b) visitation with minors, or

(c) the support of minors and spouses or former spouses.

As the Tribe argues, an award of attorney fees and expenses under MCR 3.206(C) is for domestic relations actions. Adoption is not an action defined as a domestic relations action under MCR 3.201;therefore, Nelson and the Arbutantes improperly requested attorney fees and costs under this court rule, and the trial court abused its discretion by authorizing an award for attorney fees . *Haliw*, 471 Mich at 707.[7]

VI

We affirm the trial court's determination that KMN is an Indian child and that the placement preferences in ICWA did not apply on June 4. But in light of our analysis of MIFPA, we vacate the June 4 orders certifying Nelson's consent to adoption of KMN by the Arbutantes, terminating Nelson's parental rights after her consent, making KMN a ward of the court for purposes of adoption, and transferring KMN to the Arbutantes for a pre-adoptive placement, and the July 9 order of adoption.[8] We also vacate the portion of the trial court's July 9 order awarding attorney fees and costs.

The Tribe argues that if we vacate the June 4 orders certifying Nelson's consent to adoption, terminating Nelson's parental rights, making KMN a ward of the court, transferring KMN to the Arbutantes for a pre-adoptive placement, and the July 9 order of adoption in lower court docket number 14-000805-AD, we should also reverse the order closing the abuse and neglect case in lower court docket number 13-008396-NA. But no claim of appeal was filed regarding the trial court's order closing that case; consequently, any challenge to the order closing that case is not properly before this Court. Cf *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992) ("Where a party has claimed an appeal from a final order, the party is free to raise on appeal issues related to other orders in the case.").

We remand for proceedings consistent with this opinion and do not retain jurisdiction.

---

[7] The Arbutantes maintain the trial court could have nevertheless found the petition for rehearing frivolous under MCL 600.2591, but because no request was made for costs and fees under this statute, and the trial court did not rule that the petition was frivolous, we decline to address the Arbutantes' unpreserved claim. *Autodie, LLC v City of Grand Rapids, Dep't of Treasury*, 305 Mich App 423, 431; 852 NW2d 650 (2014) ("This Court will generally decline to address unpreserved issues unless 'a miscarriage of justice will result from a failure to pass on them, or if the question is one of law and all the facts necessary for its resolution have been presented, or where necessary for a proper determination of the case.' ").

[8] Because we vacate the trial court's order of adoption, we decline to address the Tribe's alternative argument on appeal that it was entered prematurely under MCL 710.56.

-11-

No costs, neither party having prevailed in full.  MCR 7.219.

/s/ Kurtis T. Wilder
/s/ Michael J. Riordan
/s/ Jane E. Markey