*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re EPPS/ROBINSON, Minors.

UNPUBLISHED
May 26, 2022

No. 358957
Wayne Circuit Court
Family Division
LC No. 2021-000420-NA

In re K. J. S. M. MUHAMMAD, Minor.

No. 358958[1]
Wayne Circuit Court
Family Division
LC No. 2021-000502-NA

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

The central questions in this case are (1) whether the trial court made an error when in found that respondent sexually assaulted one of his four children, and (2) whether the trial court made an error when it terminated respondent's parental rights as to all four of his children after finding that he sexually assaulted one of them. We find no such errors. Respondent has four children: NE, HE, MR, and KM. The trial court terminated his parental rights to NE after it found that respondent had sexually abused NE—who was 14 years old at the time of the abuse—and asked her to use a vibrating sex toy on herself. Relying on the doctrine of anticipatory neglect or abuse and respondent's sexual abuse of NE, the trial court also terminated respondent's parental rights to HE, MR, and KM, who was a toddler. The specific questions before us are whether the evidence below supported the statutory grounds for termination, and whether termination was in the children's best interests. Finding no errors in the trial court's decision to terminate respondent's parental rights, we affirm, but remand for the ministerial task of correcting the

---

[1] This Court consolidated these two appeals on October 26, 2021. *In re Epps/Robinson Minors*, unpublished order of the Court of Appeals, entered October 26, 2021 (Docket Nos. 358957 and 358958).

termination orders to reflect the proper statutory grounds relied upon to terminate respondent's parental rights.

## I. BACKGROUND

This matter arose in May 2021 when the Department of Health and Human Services filed two separate petitions seeking termination of parental rights to respondent's four minor children. The first petition sought termination of his rights to NE, HE, and MR, all of whom shared the same mother. The second petition sought termination of his rights to KM, who had a different mother than NE, HE, and MR. Respondent only sporadically saw his children. In November 2020, however, NE moved in with respondent, who lived in an apartment with his mother. NE moved in with respondent because NE's mother could no longer deal with NE's apparent behavioral issues, which included acting inappropriately over social media,[2] engaging in sexual activity, sneaking out of the house, and lying about her conduct. The petitions alleged that one morning, NE awoke to respondent rubbing her breasts and vagina over her clothing, and, separately, that he asked NE to use a vibrator on herself.

On August 23, 2021, the Court held a combined termination hearing. Testimony showed that although NE was supposed to sleep in her grandmother's bedroom, respondent "ma[d]e [NE] sleep with him." NE testified that one mid-February 2021 morning, she awoke to respondent touching her vagina, and pinching her nipples, over her clothes. NE told her mother about the sexual abuse "a few days after" it occurred. NE's mother immediately picked up NE from respondent's apartment. While inside the apartment, NE's mother found sex toys in a duffle bag at the foot of the bed in which NE slept (though respondent, who had a sex-toy business, claimed that he kept them out of NE's sight). NE testified that, separate from the sexual abuse of mid-February 2021, respondent "kept . . . asking" her to use a vibrator on herself. NE testified that she feared respondent, did not trust respondent, and did not think her siblings would be safe in respondent's care. Despite testifying that NE had lied in the past, NE's mother denied having any reason to believe NE was being dishonest about respondent sexually abusing her.

Respondent testified he would never "do no sick stuff" like ask his child to use a vibrator, and maintained that he never touched NE in a sexual manner. Respondent also maintained NE's allegations were untrustworthy because NE had previously recanted an allegation that her stepfather (the husband of NE's mother) molested her. NE's mother, on the other hand, testified NE never accused NE's stepfather of molesting her. NE had, instead, indicated to her mother that she once felt uncomfortable when NE's stepfather "g[o]t aroused" while he, NE, and NE's siblings were watching a movie. According to NE's mother, NE's stepfather immediately removed himself from the situation.

The trial court found NE and NE's mother credible, and it found respondent's testimony to be partially untruthful. The trial court took issue with respondent making "a big deal" about NE's recantation of the molestation allegation because "there was no sexual assault [from her stepfather]

---

[2] NE's mother testified that NE used social media despite being prohibited from doing so by her parents. According to her mother, NE used social media to talk with boys, dance "inappropriately," and send nude photographs of herself.

that needed to be reported." The trial court also took issue with respondent's focus on NE's behavior without demonstrating a "nexus" between her behavior and her allegations of sexual abuse. And the trial court found that respondent's testimony, that he kept the sex toys out of sight from NE, was contradicted by the testimony of NE and her mother. The trial court concluded respondent sexually abused NE and inappropriately exposed her to sex toys and, thus, exercised jurisdiction over the children.

At the end of the combined termination hearing, the trial court found statutory grounds to terminate respondent's parental rights to his four children under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ix*) because respondent sexually abused NE, and there was a reasonable likelihood all of the minor children would be harmed if returned to respondent's care. The trial court also found termination of respondent's parental rights was in all of the children's best interests. The trial court concluded termination was in NE's best interests because respondent sexually abused her. The trial court concluded termination was in the best interests of HE and MR because, although not abused by respondent, they were similarly situated with NE. And the trial court concluded termination was in KM's best interests because, despite the belief of KM's mother that respondent was a good father and posed no risk to KM, and though not similarly situated with NE, HE, or MR, it would be inappropriate to leave KM with a sexually-abusive father. The trial court believed all of the children were at risk of future abuse or neglect from respondent under the doctrine of anticipatory neglect, and "deserve[d] to be raised in a safe and stable environment with permanence and stability," which respondent could not provide. Accordingly, the trial court terminated respondent's parental rights to NE, HE, MR, and KM. These appeals followed.

## II. LAW AND ANALYSIS

### A. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues the trial court erred by finding clear and convincing evidence supporting at least one statutory ground for termination. Respondent asserts the trial court erred in believing NE's allegations of sexual abuse, especially considering he had no prior record with Children's Protective Services and no prior allegations of sexual abuse against him. We disagree.

### 1. STANDARD OF REVIEW

We review for clear error the trial court's determination that a statutory ground for termination has been established. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). A finding of fact is clearly erroneous if the reviewing court has "a definite and firm conviction that a mistake has been committed," giving due regard to the trial court's "special opportunity . . . to judge the credibility of the witnesses." *Id.* (quotation marks and citations omitted); see also MCR 2.613(C); MCR 3.977(K).

### 2. LEGAL STANDARD FOR TERMINATION OF PARENTAL RIGHTS

To terminate parental rights, "the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "Only one statutory ground for termination need be established" to terminate a respondent's parental rights. *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012). Thus, if the trial court properly finds at least one

statutory ground for termination, any error in finding that another statutory ground also existed is harmless. See *In re Powers*, 244 Mich App 111, 118; 624 NW2d 472 (2000). The trial court found there was clear and convincing evidence to establish statutory grounds for termination of respondent's rights to his four children under MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ix*),[3] which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> *       *       *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
>
> *       *       *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.
>
> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:
>
> *       *       *
>
> (*ix*) Sexual abuse as that term is defined in . . . MCL 722.622.[4] [MCL 712A.19b(3)(b)(*i*), (j), and (k)(*ix*) (footnote added).]

---

[3] We note that the trial court cited MCL 712A.19b(3)(k)(*ix*) as the third statutory ground for termination at the termination hearing, but it cited MCL 712A.19b(3)(k)(*iv*) (loss or serious impairment of an organ or limb) as the third statutory ground for termination in its written termination orders. Although courts speak through their written orders, *In re KMN*, 309 Mich App 274, 287; 870 NW2d 75 (2015), it is quite clear the trial court terminated respondent's parental rights because he sexually abused NE. This case also did not involve any allegations of physical injury. Thus, it appears the trial court's citation to MCL 712A.19b(3)(k)(*iv*) in its written orders are purely clerical errors that should be corrected on remand.

[4] MCL 722.622(z) defines "sexual abuse" as "engaging in sexual contact or sexual penetration as those terms are defined in . . . MCL 750.520a[] with a child." This case involves sexual contact only. MCL 750.520a defines "sexual contact" as including, in relevant part, "the intentional

"[T]he harm in question need not be physical; a risk of *emotional* harm can suffice." *In re Pederson*, 331 Mich App 445, 473; 951 NW2d 704 (2020) (quotation marks and citation omitted; emphasis in original). Moreover, "[e]vidence may be uncontroverted, and yet not be clear and convincing. Conversely, evidence may be clear and convincing despite the fact that it has been contradicted." *Id*. at 472 (quotation marks and citations omitted).

### 3. ANALYSIS

The trial court properly found at least one statutory ground to terminate respondent's parental rights. Although there was evidence indicating NE had been deceitful about certain things in the past, the trial court found no reason to disbelieve NE's testimony that respondent sexually abused her. On the other hand, the trial court found respondent to be a partially incredible witness for a few reasons. First, the trial court found unpersuasive respondent's attempt to discredit NE by describing NE's past misbehavior. The trial court found there was no "nexus" between NE's behavior and her allegations of sexual abuse. That is, it appears the trial court believed that to show that NE's allegation was untrustworthy, respondent had to show she made the allegations because she was "unhappy in [respondent's] home," punished, or "something happened" and "sudden[ly] she made these allegations." Second, the trial court also found unpersuasive respondent's attempt to discredit NE by indicating NE had recanted her molestation allegations against her stepfather. The trial court relied on the testimony of NE's mother—which the trial court found credible—finding that it established there was no sexual assault in that situation. Finally, the trial court found unpersuasive respondent's testimony that he kept the sex toys away from NE because NE's mother was readily able to access them at the foot of NE's bed.

Deferring to the trial court's special opportunity to judge the witnesses' credibility, the trial court's reasoning supports a finding that respondent's sexual abuse was proved by clear and convincing evidence, regardless of the fact respondent contested NE's allegations. See *Mota*, 334 Mich App at 320 (explaining the clear-error standard of review); *Pederson*, 331 Mich App at 472 (explaining evidence that has been contradicted may still be clear and convincing). Moreover, NE testified she feared respondent as a result of his actions, and it is reasonable to predict NE would suffer additional harm—physical or emotional—if she were returned to respondent's care. See *Pederson*, 331 Mich App at 473 (explaining *emotional* harm can suffice under MCL 712A.19b(3)). Accordingly, we are not left with a "definite and firm conviction" the trial court erred by finding respondent sexually abused NE and NE would likely suffer further harm from respondent. *Mota*, 334 Mich App at 320.

Although a trial court need only find one statutory ground to support termination, *In re Olive/Metts*, 297 Mich App at 41, respondent's sexual abuse of NE supported termination of his parental rights to NE under MCL 712A.19b(3)(b)(*i*) (supporting termination if the parent's act caused sexual abuse to his or her child or the sibling of the child and the child will suffer if returned to the parent), (j) (supporting termination if the child likely will be harmed if returned to the

---

touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification," or "done for a sexual purpose[.]" MCL 750.520a(q).

parent), and (k)(*ix*) (supporting termination if the parent sexually abused his or her child or the sibling of the child and the child likely will be harmed if returned to the parent). Additionally, because all four minor children are siblings, respondent's sexual abuse of NE supported termination of his rights as to *all* the children under MCL 712A.19b(3)(b)(*i*) and (k)(*ix*). See *In re Hudson*, 294 Mich App 261, 265-266, 269; 817 NW2d 115 (2011) (relying on dictionary definition of "sibling" as " '[o]ne of two or more individuals having one or both parents in common; a brother or sister,' " and affirming trial court's termination of parental rights for all siblings after finding respondent sexually assaulted one).

Notwithstanding termination under MCL 712A.19b(3)(b)(*i*) and (k)(*ix*), respondent's sexual abuse of NE supported termination to all the minor children under MCL 712A.19b(3)(j) because each of the minor children may suffer emotional harm if they were returned to the care of NE's abuser. See *In re Hudson*, 294 Mich App at 269 (reasoning that "[a]ll [the respondent's] children will have a lifelong struggle dealing with what happened to their family as the result of [the] respondent's reprehensible behavior" of sexually abusing her teenage son and lying about it). Additionally, under the doctrine of anticipatory neglect, that respondent sexually abused one of his minor children raises the risk that he may sexually abuse another of his minor children. See *Mota*, 334 Mich App at 323 (explaining how a parent treats one child is probative of how he or she may treat other children).

This Court has cautioned against applying the anticipatory-neglect doctrine to children who were not abused or neglected, and who are not similarly situated to the sibling or siblings who were abused or neglected. See *In re LaFrance*, 306 Mich App 713, 730-732; 858 NW2d 143 (2014); *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (holding that the "probative value of [an anticipatory neglect] inference is decreased by differences between the children, such as age and medical conditions."). *LaFrance* and *Kellogg* are distinguishable. In *LaFrance*, the focus was on a child with cerebral palsy, the respondents' ability to care for that child, and three other children who "did not share their infant sister's medical vulnerabilities or inability to articulate personal needs or discomforts." *In re LaFrance*, 306 Mich App at 731. In *Kellogg*, the two children at issue had "marked and significant differences," including time spent with the respondent, and a history, or lack thereof, of trauma, behavioral, and mental-health issues. *In re Kellogg*, 331 Mich App at 260-261.

Here, however, respondent sexually abused his own teenage daughter after she was left in his care. Respondent made NE sleep in bed with him, asked her to use a sex toy on herself, and sexually abused her as she slept and slowly awoke. Given the circumstances of this case, we see no reason to believe that respondent would restrain himself from sexually abusing another of his female children should they come to live in his home. Unlike the "unusual circumstances" of *LaFrance*, which did not warrant application of the anticipatory-neglect doctrine, no such circumstances exist here. Rather, we are simply addressing an individual—respondent—who becomes a danger to children left in his care.

Respondent's argument, that there could be no statutory grounds for termination merely because he had never previously been accused of sexual misconduct, is unpersuasive. There need not be any established history of sexual abuse to terminate parental rights because a "single act of sexual abuse" is sufficient to support termination. See *Mota*, 334 Mich App at 322-323. See also MCL 712A.19b(3)(b)(*i*) (supporting termination if the parent's *act* caused sexual abuse). Thus, a

lack of prior sexual-abuse allegations does not prove innocence of the current sexual-abuse allegation. The trial court properly considered the circumstances of NE's allegation and weighed the witnesses' credibility to conclude respondent sexually abused NE *on this one occasion*; whether someone alleged respondent sexually abused another child in the past had no bearing on the factual determination as to this one instance. See *In re Mota*, 334 Mich App at 320 (giving due regard to the trial court's "special opportunity" to judge the credibility of witnesses before it). Similarly, respondent's argument, that NE's allegation of sexual abuse against her stepfather turned out to be false and, thus, made her allegation against respondent untrustworthy, does not lead to the conclusion that the abuse did not happen here. The trial court did not clearly err when it considered the testimony of NE and NE's mother regarding the situation with NE's stepfather, weighed their credibility, and concluded there "was no sexual abuse [from the stepfather] that needed to be reported."

Because respondent placed each of the minor children at risk of physical or emotional harm by sexually abusing NE, clear and convincing evidence supported at least one statutory ground for termination of respondent's parental rights to all the minor children. Consequently, we are not left with a definite and firm conviction the trial court made a mistake by finding statutory grounds to terminate respondent's parental rights. *In re Mota*, 334 Mich App at 320.

## B. CHILDREN'S BEST INTERESTS

Respondent also argues termination was not in the minor children's best interests because the children were not all similarly situated, and testimony established respondent was a good father to KM.[5] We disagree.

### 1. STANDARD OF REVIEW

This Court reviews for clear error the trial court's determination that termination is in a child's best interest. *In re Mota*, 334 Mich App at 320. That termination is in a child's best interest must be established by a preponderance of the evidence. *Id*.

### 2. LEGAL STANDARD FOR DETERMINING CHILDREN'S BEST INTERESTS

When determining the children's best interests, a trial court must consider each child individually. *In re Olive/Metts*, 297 Mich App at 42. A trial court need not, however, make "individual" and "redundant factual findings" if the children's best interests do not significantly

---

[5] In his brief on appeal, respondent argues termination of his parental rights was not in KM's best interests, but he provides no argument regarding whether termination was in the best interests of NE, HE, or MR. However, the section headings in respondent's brief and respondent's request for relief make clear he intended to argue termination was not in *any* of his children's best interests. We will analyze this broader issue, notwithstanding respondent's apparent abandonment of it, because the evidence demonstrated termination was in *all* of the children's best interests. See *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019) (stating that failure to brief an issue constitutes abandonment); *Bitterman v Oakley*, 309 Mich App 53, 66; 868 NW2d 642 (2015) (explaining that this Court may "nevertheless consider the [abandoned] issue.").

differ. *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014). The trial court must also "focus on the child rather than the parent." *In re Mota*, 334 Mich App at 321.

> In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to [the] parents' home within the foreseeable future, if at all. [*Id.* (quotation marks and citations omitted; alteration in original).]

While a trial court generally must consider a child's placement with relatives, it need not consider a child's placement with a biological parent because biological parents are not considered "relatives" under the termination statute. *Id.* at 321-322. And although a trial court may consider a wide range of factors in determining the children's bests interests, an "especially egregious" single act may serve as the basis for terminating a respondent's parental rights. *Id.* at 322-323 (stating that this Court could not conclude that the trial court clearly erred by finding that a "single act of sexual abuse . . . revealed a side of [the] respondent that posed a serious danger to his minor children" and supported terminating his parental rights).

### 3. ANALYSIS

The trial court properly determined termination of respondent's parental rights was in the minor children's best interests. The same reasons that supported statutory grounds for termination of respondent's parental rights also demonstrate termination was in the minor children's best interests: respondent demonstrated an inability to properly parent *all* of his minor children when he sexually abused NE and asked her to use a sex toy.

The trial court properly considered the best interests of each child individually, and determined they were all affected—directly or indirectly—by respondent's abuse of NE. The trial court also properly determined KM was not similarly situated with NE, HE, and MR because KM was an infant at the time of the termination proceedings and KM had a different mother than the other children. As the trial court explained, however, despite the children not all being similarly situated, respondent's abuse of NE was probative of how he may one day treat any of his children, and this abuse constituted a risk of future harm to all the children. See *In re Mota*, 334 Mich App at 323. Accordingly, the trial court properly found—under the doctrine of anticipatory neglect— that termination was in all of the children's best interests because only termination of respondent's parental rights would safeguard the children from future physical or emotional abuse by respondent.

The evidence established respondent only saw his children sporadically, so it is unclear how strong of a bond he shared with them. Any bond respondent did share with the children, however, did not prevent him from sexually abusing NE, an act for which respondent refused to accept responsibility or express remorse. The sexual contact and lack of contrition both

demonstrate the risk respondent posed to each of the children. See *In re Mota*, 334 Mich App at 323 (finding that termination was in the children's best interests when the respondent's bond with the child did not prevent him from exploiting and abusing the child). Respondent's bond with the children also did not outweigh the harm he caused NE, the risk he posed to all the children, or the children's need for permanency and stability—conditions the children could not achieve if returned to NE's abuser. That respondent sexually abused NE during the brief, four-month period that constituted the *only* time one of respondent's children lived with him—without a mother present—also demonstrated the immense risk he posed to the children.

Respondent's assertion, that the trial court failed to sufficiently account for the belief of KM's mother that respondent was a good father to KM, is belied by the record. The trial court expressly considered this testimony but concluded the risk of sexual abuse outweighed the preference of KM's mother to maintain respondent's parental rights to KM. For all the reasons previously discussed, the trial court's assessment is not clearly erroneous. Additionally, respondent's argument that reunification efforts should be made in his case is unpersuasive because the trial court expressly found reasonable efforts at reunification were already unsuccessful. Moreover, once a trial court has found statutory grounds for termination, the focus shifts to the child, rather than the parent, to assess the child's best interests. *In re Mota*, 334 Mich App at 320-321. That respondent may be able to better parent his children if such efforts were made is an argument he should have, but failed, to make before the trial court. Respondent's parenting ability was just one factor the trial court could consider in assessing the minor children's best interests, and the trial court did not clearly err by concluding that other relevant factors, such as the children's need for stability and safety, outweighed this factor.

Because respondent's egregious act of sexually abusing NE, even if it only occurred once, demonstrated he was a serious danger to each of his children, we are not left with a definite and firm conviction the trial court erred by determining termination of respondent's parental rights was in the children's best interests. *In re Mota*, 334 Mich App at 320, 322-323.

## III. CONCLUSION

We affirm the trial court's decision, but remand for the ministerial task of amending the termination orders to reflect the proper statutory grounds relied on to terminate respondent's parental rights. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Noah P. Hood