*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BABY BOY FRASIER, Minor.

UNPUBLISHED
May 23, 2024

No. 367015
Wayne Circuit Court
Family Division
LC No. 2021-000822-NA

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

The trial court terminated respondent's parental rights to BBF after her rights had previously been terminated to another child, BBF was born with substances in his system, and respondent had not rectified other conditions that led to the previous termination. We affirm.

Petitioner filed a petition to remove BBF from respondent's care and to terminate her parental rights after BBF was born because respondent had abandoned BBF, had a history of substance abuse, was homeless, had untreated mental-health issues, and had previously had her rights terminated to another child, JM. Respondent's parental rights to JM were terminated because she had abandoned him and failed to complete or benefit from her case-service plan. BBF's father was unknown, and respondent told CPS that she wanted to sign over her parental rights because she could not plan for BBF.

Following a preliminary hearing, the trial court authorized the petition, explaining that respondent abandoned BBF at the hospital without making provision for him; used marijuana and cocaine while pregnant with BBF; had a history of unstable housing, lack of employment, and mental illness; and had her rights terminated to JM for failure to comply with a treatment plan and rectify the conditions that led to the removal of JM. The trial court stated that the conditions were "similar" to those with BBF. For those reasons, the trial court stated that petitioner did not need to make efforts toward reunification with BBF. In its order following the preliminary hearing, the trial court noted that reasonable efforts were not required due to respondent subjecting the child to abandonment, maltreatment, and drug exposure as provided in MCL 722.638(1) and (2).

Respondent's rights to JM had been terminated following a trial that occurred in March 2023, approximately six weeks before BBF was born. In that earlier case, the trial court found that statutory grounds to terminate existed under MCL 712A.19b(3)(a)(*ii*), (c), and (j). The trial court

-1-

noted, however, that it did not find statutory grounds under (g) because it could not "say for sure that mother has financial ability to care for the kid. $900 a month is not probably enough to care for anybody, herself alone."

As to BBF, the trial court held a combined adjudication and termination hearing in June 2023, approximately two-and-a-half months after BBF was born. The trial court took judicial notice of its orders in respondent's prior case involving JM. The trial court noted that the termination order for JM showed that respondent was receiving $900 a month in disability benefits, did not have a suitable home, and had never visited JM or completed services. Further, the trial court stated that the adjudication order from November 2021 in JM's case "centered around" her use of heroin, cocaine, and marijuana, and her failure to obtain drug treatment or visit JM.

A CPS specialist testified that BBF had been born positive for cocaine and tetrahydrocannabinol (THC) and had to be transferred to the neonatal-intensive care unit after birth. The CPS specialist additionally testified that respondent left BBF at the hospital and did not return to visit him. At first, CPS could not reach respondent, but respondent attended a Team-Decision Meeting (TDM) seven days after BBF was born, at which respondent appeared disconnected and jittery and made irrational statements. The CPS specialist thought that respondent appeared to be under the influence at the TDM.

Respondent reported to CPS that she had used cocaine "up to" the week of delivering BBF. Respondent also stated at that time that she wanted BBF to be adopted because respondent could not plan for BBF. Respondent did not want BBF to go with any relatives because respondent did not "want to deal with the family." Respondent reported that she was homeless and not engaged in counseling for her depression or bipolar disorder.

The CPS specialist encouraged respondent at the TDM to engage in supervised visits with BBF and provided respondent with a community-resource guide, which provided information on substance-abuse services, housing resources, and parenting classes. The CPS specialist further testified that BBF was in placement with an aunt and, if respondent's parental rights were terminated, the permanency plan would be adoption. The CPS specialist testified that respondent did not complete services in the previous case and that termination was in BBF's best interests.

Respondent testified that she visited BBF at the hospital after she left, but she could not remember which days she visited. Respondent additionally testified that she engaged in "over ten visits" with BBF after he went to live with respondent's sister and then began to engage in virtual visits. Later, respondent testified that she visited BBF five times after the preliminary hearing, but that she could no longer visit him in person "[w]ith this going on." Respondent testified that she received social-security benefits because of her mental health, and she could use those benefits to find housing and support herself. Respondent was living with a friend while she looked for her own housing. Respondent further testified that she was engaged in counseling and took medication to address her mental-health concerns. Respondent testified that she also used THC to help with her mental health. Further, respondent was engaged in parenting classes.

A foster-care worker testified that she was not aware that respondent received social-security benefits and that respondent had not provided any proof of income. The foster-care worker explained that respondent had engaged in one virtual visit and respondent could receive

transportation assistance for visits. Respondent had failed to confirm "the first few visits." Respondent told the foster-care worker that she did not have suitable housing, and the foster-care worker provided her with housing resources.

After receiving the evidence, the trial court made its ruling. The trial court first found that there was a preponderance of evidence for the court to take jurisdiction on the basis of respondent's statements at the TDM, her testimony, the previous court orders, and the medical records. As to termination, the trial court found that the unnamed father had abandoned BBF. In regard to respondent, the trial court found that grounds for termination existed under MCL 712A.19b(3)(g), (i), (j), and (k)(*i*) and that termination was in BBF's best interests.

The trial court issued a written order terminating respondent's rights to BBF. The trial court found that, under (g), respondent had failed to provide proper care or custody for BBF and there was no reasonable expectation that she would do so in a reasonable time when her rights had been so recently terminated to JM after 16 months of offered services. Next, under (i), the trial court found that respondent's rights had been terminated to JM, and she had failed to rectify the conditions that led to the termination. Further, under (j), the trial court found a reasonable likelihood that BBF would be harmed if returned to respondent's care because of her history of untreated substance abuse and mental-health issues. Finally, under (k)(*i*), the trial court found that respondent had abandoned JM.

Further, the trial court found that, although BBF was placed with a relative, termination was in the child's best interests when respondent had failed to follow the treatment plan in JM's case, visit JM, obtain stable housing, or visit BBF more than one time. Respondent's history of untreated mental illness and substance abuse, continued use of cocaine and marijuana, and her previous termination of parental rights, while pregnant with BBF, all weighed in favor of termination of her rights to BBF. The trial court noted that BBF was entitled to stability and permanence.

Respondent now appeals.

Respondent argues that the trial court erred by finding that there was clear and convincing evidence to support any of the statutory grounds for termination. This Court reviews for clear error a trial court's finding that a statutory ground for termination has been established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. (citation omitted).

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Under MCL 712A.19b(3)(g), a court may terminate parental rights if it finds clear and convincing evidence that "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

The trial court made no finding that respondent was financially able to provide proper care and custody before terminating rights. The trial court relied on the order terminating respondent's parental rights to JM to find that respondent received $900 monthly social-security benefits. In that case, however, the trial court did not terminate rights under (3)(g) specifically because the trial court could not find that a $900 income meant that respondent was financially able to provide proper care and custody to JM. In BBF's case, there is, likewise, no evidence from which we can infer that respondent was financially able to provide proper care or custody for BBF. Respondent lacked suitable housing and testified that she was exploring low-income housing options. Respondent also did not provide any proof of income to CPS. This record does not support an inference that respondent was financially able to provide care and custody. Therefore, the trial court clearly erred by finding that termination was proper under (3)(g).

The trial court did not clearly err, however, when it found that termination was proper under MCL 712A.19b(3)(j), which provides for termination when there is clear and convincing evidence of "a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." "The harm contemplated under MCL 712A.19b(3)(j) includes emotional harm as well as physical harm." *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021). A parent's failure to comply with a service plan is evidence that a child will be harmed if returned to the parent's care. *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

Respondent indisputably failed to comply with her service plan in JM's case, and her rights to JM were terminated only a month before BBF was born. Respondent engaged in no visitation with JM and then left BBF at the hospital after he was born. Although respondent claimed to have engaged in visitation with BBF, CPS did not see respondent at the hospital. Further, beyond briefly testifying that she was engaged in services, respondent has not presented evidence that she was engaged in, or benefiting from, services. Respondent's and BBF's positive screens for drugs in April 2023 indicate that respondent had not benefited from substance-abuse services, even if she had participated in them. Respondent also had not obtained suitable housing or shown that she was actively engaged in mental-health services. Therefore, the trial court did not clearly err by finding that there was a reasonable likelihood that BBF would be harmed if returned to respondent's care. See *id*. at 713. Because a trial court need only find that one statutory ground was proven by clear and convincing evidence, there is no need to review the additional grounds. See *In re Ellis*, 294 Mich App at 32.

Next, respondent argues that the trial court erred by finding that termination was in BBF's best interests. This Court reviews for clear error a trial court's determination about a child's best interests. *In re White*, 303 Mich App at 713. If a court finds grounds for termination of parental rights and that termination is in the child's best interests, "the court shall order termination of parental rights." MCL 712A.19b(5). The trial court must determine, by a preponderance of the evidence, whether termination is in the child's best interests. *In re White*, 303 Mich App at 713. The trial court should consider all of the evidence when determining whether it is in the child's best interests to terminate parental rights, which "may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (cleaned up). Because "a child's placement with a relative weighs against termination," a trial court must explicitly consider that

fact when determining whether termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012).

There was no evidence in the record indicating that respondent had a bond with BBF. Respondent demonstrated poor parenting ability by abandoning JM, leaving BBF at the hospital, and only, according to the foster-care worker, engaging in one virtual visit. Although respondent testified that she visited BBF multiple times, the trial court specifically found that respondent's "testimony just overall was not credible." This Court defers to the trial court with respect to credibility of witnesses. *In re White*, 303 Mich App at 711. Further, the trial court found that termination was the best way for BBF to achieve stability and permanence, considering respondent's history of instability, recent termination of parental rights to JM, lack of compliance with services, untreated substance abuse and mental illness, and lack of stable housing. Respondent claims on appeal that her circumstances have changed since her parental rights to JM were terminated and that she is engaging in services, but the record does not support respondent's assertions.

Despite respondent's argument that the trial court failed to consider that BBF was placed with a relative when making its best-interest determination, the trial court explicitly considered this factor in its order in stating that termination was in BBF's best interests despite his placement with an aunt. A court speaks through its written orders. See *In re KMN*, 309 Mich App 274, 287; 870 NW2d 75 (2015). Therefore, the trial court properly considered BBF's placement with a relative when making its best-interest determination.

Finally, respondent briefly argues that the trial court should have permitted respondent time to comply with a service plan and work toward reunification. Respondent did not, however, include this issue in her statement of questions presented. Accordingly, this Court need not address it. See *Butler v Simmons-Butler*, 308 Mich App 195, 210; 863 NW2d 677 (2014). Regardless, this Court finds no error in the trial court's determination that reasonable efforts were not required.

Reasonable efforts toward reunification of a parent and child must be made in all cases except those involving certain circumstances under MCL 712A.19a(2). See *In re Sanborn*, 337 Mich App at 259. One such circumstance is when the respondent "has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination." MCL 712A.19a(2)(c). The trial court, therefore, properly ordered at the preliminary hearing that reasonable efforts were not required when the same conditions that resulted in the termination of respondent's rights to JM existed at the time of BBF's removal. See *In re Sanborn*, 337 Mich App at 261-262.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Adrienne N. Young

-5-